Ernest Eugene BRIGHT, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Nov. 22, 1977.

Certiorari Denied by Supreme Court Feb. 6, 1978.

Ray E. Cate, Knoxville, for appellant.

Brooks McLemore, Jr., Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., Nashville, James R. Dedrick, William H. Crabtree, Asst. Dist. Attys. Gen., for appellee.

## OPINION

WALKER, Judge.

On his trial under a two-count indictment, Ernest Eugene Bright was acquitted of receiving but convicted of concealing stolen property over the value of $100 and sentenced to three to five years in the penitentiary. The property in question was a 1974 black Ford F100 pickup truck bearing public vehicle identification number F10YUT25405.

In his challenge to the sufficiency of the evidence, Bright argues that there is no evidence that the truck found in the possession of William Graves was the stolen truck and also that the court should have instructed the jury that Graves was an accomplice as a matter of law. He says that there was no corroboration of the accomplice and without Graves' testimony the conviction cannot stand.

Bright did not testify or offer any evidence.

The truck involved was stolen from the Allen-Russell Ford lot in Knoxville on December 4 or 5, 1973. The business records of state witness Graves showed the cash purchase of a black truck on December 12. Graves testified that the appellant had called him to come look at a truck that Bright wanted to sell. Graves said that the purchased from the appellant a "pretty new" black truck for about $1400 plus a promise, never fulfilled, to do some electrical work for the appellant. Graves did not obtain title to the truck although his wife testified that she attempted to get a title but was told she needed more information.

About six months after the truck's disappearance, an examination of the vehicle by officers revealed two public identification tags, one with the above serial number and another identified as that from a white Ford pickup truck. (Bright had sold a wrecked 1973 white Ford pickup truck to Graves shortly before Graves obtained the 1974 black Ford).

When Graves reported to Bright that officers had taken the truck from him, Bright instructed him to say that he had obtained it from one Carl Long and a salesman from another Ford agency. Graves said that instead of doing this he went to Knoxville police and reported what Bright had told him to say. Graves testified that Bright sold him the truck, and that he did not even know Long.

In a written statement to officers, Bright said that Long and another salesman tried to sell him the truck but that he refused to buy it; that Graves was there and purchased it from them for $1200. Bright agreed that he had sold Graves a wrecked 1973 white Ford pickup truck.

Harvey William Emmitt, a former employee of Graves, testified that, before Graves obtained the truck, he saw in Bright's garage a late model black truck, appearing to be a Ford. Emmitt thought this was about Christmas, 1974, but he said he was not too good on dates.

■ The term "vehicle identification number" implies that the number serves to identify the vehicle. The number of the stolen vehicle matched that of the truck recovered from Graves. The other number was loosely riveted to it and belonged to a different vehicle. The jury was warranted in finding that the black 1974 Ford was the vehicle in question.

■ The evidence does not clearly establish whether or not Graves was an accomplice. His complicity was therefore properly for the jury. *Ripley v. State,* 189 Tenn. 681, 227 S.W.2d 26 (1950); *Conner v. State,* 531 S.W.2d 119 (Tenn.Crim.App.1975); *Abbott v. State,* 508 S.W.2d 801 (Tenn.Crim. App.1974).

■ At Bright's request the court instructed the jury on accomplice testimony. Whether or not Graves was an accomplice, his testimony was corroborated by Emmitt, whose testimony established that the truck obtained by Graves was similar to the one he had seen at Bright's home just before Graves acquired it. Only slight circumstances are needed to corroborate an accomplice's testimony. *Boaz v. State,* 537 S.W.2d 716 (Tenn.Crim.App.1975).

These assignments are without merit. The evidence does not preponderate against the verdict.

■ Bright next complains of the court's instructions about absent witnesses. After the main charge the court instructed the jury:

"(I)f from the proof you find that there was a material witness or witnesses, for either the State or the defendant, and such witness or witnesses is or are absent, and that such witness or witnesses was or were under the control of, or available to one or the other of the parties, to the exclusion of the other party, or that such witness possessed knowledge peculiar to

one side, to the extent that such side should have called him, then there is a presumption that if such a witness had been called, his or their testimony would have been unfavorable to the side that should have called or produced such a witness. Whether there was or was not such a witness in this case is for you to determine."

Bright argues that this instruction could apply to only one of two persons, himself or Carl Long. The court had carefully instructed the jury that the appellant had the right not to testify and that it should draw no inference from the fact that he did not take the stand.

This instruction applied to both sides and there was no showing that Long or any other possible witness was available to one side and not to the other. The instruction was inapplicable to the evidence here but was harmless. TCA 27–117. *See Conboy v. State,* 2 Tenn.Crim.App. 535, 455 S.W.2d 605 (1970).

By his third assignment of error, Bright argues that he was prejudiced by the court's refusal to direct a verdict in his favor on the receiving count. In view of both his acquittal on this charge and the corroboration of Graves' testimony, we find no prejudice to him.

Finally, Bright argues he was improperly restricted in his cross-examination of FBI agent Robinson and Officer Cameron about the location of a confidential vehicle identification number on the truck. He says this prevented him from determining whether or not the confidential number matched the public number. The record reflects that Bright was not prevented from eliciting a comparison of the numbers, but that he was not allowed to ask for the precise location of the confidential number. In fact, he found that Robinson did not check the confidential number. Cameron did check it and testified that it was the same as the public number.

There was no abuse of discretion in the trial judge limiting interrogation on the exact location of the confidential number. Bright was not precluded from inquiring about the matter he claims prejudicial.

All assignments are overruled and the judgment is affirmed.

TATUM and BYERS, JJ., concur.