STATE of Tennessee, Appellee,

v.

**Timmy Lydell DULSWORTH and Robert Cordell Stewart,**
**Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 29, 1989.
Permission to Appeal Denied by
Supreme Court Oct. 2, 1989.

James D. White, Jr., Celina, for Timmy Lydell Dulsworth.

A. Russell Brown, Lafayette, for Roger Cordell Stewart.

Charles W. Burson, Atty. Gen. & Reporter, Debra K. Inglis, Asst. Atty. Gen., Nashville, Tom P. Thompson, Jr., Dist. Atty. Gen., John D. Wootten, Jr., Asst. Dist. Atty. Gen., Hartsville, for appellee.

## OPINION

JONES, Judge.

The appellants; Timmy Lydell Dulsworth[1] and Roger Cordell Stewart, were found guilty of robbery with a deadly weapon by a jury of their peers. Dulsworth was also convicted of assault with intent to commit murder in the first degree. The trial judge found that Dulsworth was a persistent offender and committed especially aggravated offenses; and he imposed a Range II sentence of life imprisonment as to each offense. The two sentences are to be served concurrently. Stewart was found to be a standard offender, and the trial court imposed a Range I sentence of twenty-five (25) years.

After the trial court denied the appellants' respective motions for a new trial, they appealed as of right to this Court pursuant to Rule 3(b), Tenn.R.App.P.

## ISSUES PRESENTED FOR REVIEW

Dulsworth has raised nine issues for our review. He contends that:

(a) the trial court committed error of prejudicial dimensions in denying his mo-

tion to suppress the evidence seized incident to his unlawful arrest;

(b) the trial court committed error of prejudicial dimensions in denying the motion to suppress the blood sample taken from his body after his arrest;

(c) the trial court committed error of prejudicial dimensions in denying his motion to suppress the victim's in-court identification;

(d) the instruction given by the trial court regarding the exiles of law governing the testimony of an accomplice was erroneous;

(e) the instruction given by the trial court regarding the range of punishment for the offense of assault with intent to commit murder in the first degree was erroneous; and the trial court committed error in imposing a sentence pursuant to T.C.A. § 39-2-103(b);

(f) the trial court erred in failing to instruct the jury as to all of the lesser included offenses of assault with intent to commit murder in the first degree;

(g) the trial court committed error in overruling his objections to evidence introduced by the State;

(h) the instructions given by the trial court regarding the issues of identity and voluntary intoxication were erroneous; and

(i) the trial court erred in sentencing him as a persistent offender.

Stewart has raised four issues for our review. He contends that:

(a) the evidence contained in the record is insufficient to permit a rational trier of fact to find him guilty of armed robbery beyond a reasonable doubt;

(b) the trial court committed error of prejudicial dimensions in denying his motion to suppress the evidence seized from his person after his arrest;

(c) the instruction given by the trial court regarding the rule of law governing the aiding and abetting of a criminal offense was erroneous; and

---

1. He is also referred to as "Dulworth" and "Dullsworth" in the record.

(d) the sentence imposed by the trial court was excessive.

## SUFFICIENCY OF THE EVIDENCE

■■■ On the morning of January 17, 1987, Elmer Lee Likens'[2] automobile became stuck in a creek. Dulsworth and Stewart discovered Likens' predicament as they were driving along a road near the creek. They stopped and helped Likens remove his vehicle from the creek. Later, Likens joined Dulsworth and Stewart.

During the morning and afternoon of the day in question, Dulsworth, Stewart and Likens drank beer and discussed the possibility of robbing the victim. Dulsworth initiated the discussion. He told his companions he knew where they "could make a good bit of money." All three agreed to participate in the robbery, and plans were made to rob the victim. Later, they drove past the victim's farm, located north of Lafayette, Tennessee, in Stewart's vehicle. The victim was in the barn. The victim waved at them, and they waved back at him. They then returned to Lafayette.

The appellants and Likens went to the victim's residence at 6:30 p.m. Likens went to the front door, knocked, and the victim opened the door. He told the victim that they had had a flat tire, and he asked to use the telephone to call for assistance. The victim advised Likens that he did not have a telephone. Dulsworth and Likens then forced entry into the residence while Stewart remained in the vehicle. Likens searched the residence for the victim's wife. He found her in the bathroom, and told her to lay on the floor until the robbery had been completed. Meanwhile, Dulsworth, armed with a hunting knife, immediately attacked the victim. He stabbed the victim four times. He then demanded the victim's wallet at knife-point. The victim gave him the wallet, and both Dulsworth and Likens left the victim's residence. The three fled from the scene in Stewart's car. Subsequently, they went to the home of Stewart's former wife in Lafayette.

While enroute to the home of Stewart's former wife, Dulsworth told Likens and Stewart that he thought he had killed the victim. Stewart replied that Dulsworth "did what [he] had to do." They also noticed that Dulsworth had cut his hand with the knife. After reaching their destination, an attempt was made to treat the cut on Dulsworth's hand. They also split the money found in the victim's wallet. The currency was stained with blood. The billfold was placed in a stove and burned.

The police recovered a bloody $50.00 bill from Stewart's pants pocket. A second bloody $50.00 was retrieved from a convenience store. Dulsworth had given Likens the bill to purchase a six-pack of beer at the store. The police also recovered $41.00 from a cell that Dulsworth had occupied. The currency had been placed in a crack in the cell wall.

The victim was taken to the hospital in Lafayette for treatment of his wounds. The sheriff interviewed the victim, and advised local law enforcement officers of the incident via radio. Two men, who had a scanner in their car, heard the broadcast. They went to the hospital and told the sheriff that, while enroute to Kentucky, they saw a four-door rust or burnt orange Datsun with damage to the rear of the vehicle in the area where the victim resided. There were three people in the vehicle. While enroute home, they saw the same vehicle enter the highway from a gravel road. The vehicle was enroute to Lafayette. It was the same vehicle they had seen while travelling to Kentucky. The sheriff gave local officers a description of the vehicle by radio. A deputy sheriff advised the sheriff that Stewart owned a vehicle meeting the description given by the two men.

Law enforcement officers converged on the residence of Stewart's former wife. A vehicle matching the description given by

**2.** Likens, a co-defendant, entered pleas of guilty to the offenses of robbery with a deadly weapon and assault with intent to commit murder in the first degree. Pursuant to a plea bargain agreement, the trial court sentenced Likens to serve ten (10) years in the Department of Correction in each case.

the two men was parked in the driveway of the home. Some of the officers went to the front door and others went to the back door. Stewart exited through the back door and was detained by the officers. He was subsequently placed in the back seat of a police cruiser. The other officers entered the front door and searched the residence with the consent of Stewart's former wife. Likens was found in a rear bedroom. They noticed blood, indicating someone had been bleeding. There was evidence that this person had exited the residence through a window. Subsequently, Dulsworth was found hiding in shrubbery near the Stewart residence. The Datsun was examined. There was blood on the door on the passenger side of the vehicle as well as inside the vehicle. Dulsworth, Stewart and Likens were transported to the local jail.

Stewart gave the investigating officers a statement the next day. He admitted to the officers that he had been to the victim's residence on the evening in question, but contended he remained in his vehicle the entire time.

The victim made an in-court identification of Dulsworth. Since the victim did not see Stewart on the evening in question, he could not identify him.

Stewart testified in support of his defense. He related that the three of them were enroute to the Shiloh community when Dulsworth allegedly told him that a friend lived inside the victim's residence, and he asked Stewart to pull into the victim's driveway. Dulsworth and Likens went inside the residence. When they returned, Dulsworth's hand was bleeding. He told Stewart that someone slammed the door on his hand. Stewart claimed that he was not privy to the dialogue concerning the robbery earlier in the day, and he was unaware that Dulsworth and Likens were going to rob the victim when they entered the residence. He admitted that Duls-

worth had given him $50.00, but he claimed this was a partial payment of money he had loaned Dulsworth.

There is sufficient evidence contained in the record from which a rational trier of fact could conclude that Dulsworth and Stewart were guilty of robbery with a deadly weapon beyond a reasonable doubt. Further, there is sufficient evidence from which a rational trier of fact could conclude that Dulsworth was also guilty of assault with the intent to commit murder in the first degree beyond a reasonable doubt. Tenn.R.App.P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

This issue is without merit.

## DULSWORTH'S MOTION TO SUPPRESS

Dulsworth filed a pretrial motion to suppress the victim's identification at the preliminary hearing, the blood sample obtained from a bandana, the money found in his jail cell, and "other items." The trial court conducted an evidentiary hearing on the merits of the motion. At the conclusion of the hearing, the trial court denied the motion.

In this Court, Dulsworth contends the evidence he sought to suppress was obtained in violation of the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution. He argues that his "arrest was illegal [and] any evidence obtained as a result of that illegal arrest should have been suppressed." In summary, Dulsworth contends that the evidence sought to be suppressed was seized incident to an invalid arrest.

■ It has long been established in this jurisdiction that there is no constitutional immunity from an unlawful arrest.[3] The fact that an accused has been unlawfully

3. *State v. Manning*, 490 S.W.2d 512, 514 (Tenn. 1973); *State ex rel. Wood v. Johnson*, 216 Tenn. 531, 534–535, 393 S.W.2d 135, 136 (1965); *Harris v. State*, 206 Tenn. 276, 287, 332 S.W.2d 675, 680 (1960); *Satterfield v. State*, 196 Tenn. 573, 575, 269 S.W.2d 607, 608 (1954); *State v. Miller*, 608 S.W.2d 158, 160 (Tenn.Crim.App.1980); *Robinson v. State*, 517 S.W.2d 768, 772 (Tenn. Crim.App.1974); *Graves v. State*, 489 S.W.2d 74, 84 (Tenn.Crim.App.1972); *Berry v. State*, 4 Tenn.Crim.App. 592, 598–599, 474 S.W.2d 668, 671 (1971); *Nelson v. State*, 4 Tenn.Crim.App. 228, 230–231, 470 S.W.2d 32, 33–34 (1971).

arrested only becomes relevant when evidence tainted by the arrest is sought to be introduced by the State.

■ The trial court properly denied the motion as it pertained to the identification made by the victim at the preliminary hearing, assuming *arguendo* that the arrest was invalid. *Wadley v. State,* 634 S.W.2d 658, 661 (Tenn.Crim.App.1982); *State v. Miller,* 608 S.W.2d 158 (Tenn.Crim.App. 1980). In *Miller,* the appellant moved to suppress the victim's pretrial lineup identification on the ground he was "illegally detained and arrested." This Court held that the trial court properly denied the appellant's motion to suppress. In ruling, this Court said:

> Any subsequent witness identification [following an illegal arrest] is not characterized as a "fruit" of an unlawful arrest. The basis of the identification is not the arrest but the witness's perception of the accused during the crime. An identification otherwise valid does not come under the exclusionary rule because the arrest is illegal. The arrest merely provided the means for the confrontation with the victim more promptly than would otherwise have been the case. We cannot assume that the defendant would have remained at large indefinitely if he had not been arrested on this occasion. The arrest contributed neither to the knowledge of the witness nor to the accuracy of her identification. The trial judge properly admitted evidence of the lineup identification.

608 S.W.2d at 160.

The bandana was owned by a deputy sheriff. After Dulsworth was removed from the bushes, the officers discovered that Dulsworth's hand was bleeding. The deputy sheriff provided Dulsworth with the bandana to stop the bleeding and wipe the blood from his hand so that the officers could determine the severity of the wound. Later, Dulsworth voluntarily returned the bandana to the deputy sheriff. The deputy sheriff gave the bandana to another officer since it was filled with blood.

■ Our review of the record reveals that the bandana was not mentioned during the evidentiary hearing on the merits of the motion to suppress. Nor was it brought to the attention of the trial court at any other time prior to trial. Consequently, this issue has been waived. *State v. Burtis,* 664 S.W.2d 305, 310 (Tenn.Cr.App.1983). *See State v. Burton,* 751 S.W.2d 440, 445 (Tenn.Crim.App.1988).

■ Addressing this issue on the merits, the record clearly reveals that the bandana was not seized from the appellant incident to his arrest. To the contrary, the bandana was furnished to the victim by a deputy sheriff following his arrest, was used to wipe the blood from Dulsworth's hand, and was voluntarily returned to the deputy sheriff by Dulsworth.

Dulsworth also filed a pretrial motion to suppress a blood sample taken from his body following his arrest as well as the results of tests performed using the blood sample. The trial court denied the motion at the conclusion of the evidentiary hearing.

■ The evidence adduced at the hearing revealed that the sheriff talked to Dulsworth, who was incarcerated in the jail, about obtaining blood samples. He explained to Dulsworth the reason why the blood samples were necessary. He also explained that Dulsworth could voluntarily consent to the extraction of the blood sample, or, if he did not consent, the sheriff would obtain a court order requiring him to permit the taking of the blood sample.

According to the sheriff, Dulsworth stated he would consent to the blood drawn from his body; and he was transported to the hospital where the blood sample was taken. Before the blood was drawn, Dulsworth executed a consent form. He admitted at the hearing that the signature affixed to the form was his. The nurse subsequently removed the blood from Dulsworth's body, and he was returned to the jail.

The blood taken from Dulsworth's body was consistent with blood samples obtained from the currency found in the possession of Likens and Stewart, a brown paper bag found in the back yard of Stewart's former

wife, his clothing, the curtains found inside the residence, and the bandana.

Dulsworth testified at the hearing. He related that the sheriff told him he had a court order which required him to permit the withdrawal of a blood sample. While acknowledging that his signature was affixed to the consent form, he claimed that the form had been altered after he signed it. He also stated that one of the reasons he went to the hospital was to have his hand examined by medical health care providers.

The question of whether Dulsworth consented to the withdrawal of the blood sample was a disputed question of fact. The trial judge observed the witnesses, heard their testimony in open court, and was required to determine the credibility of the witnesses in order to resolve this factual dispute. For this reason, a trial judge's findings of fact at the conclusion of an evidentiary hearing on the merits of a motion to suppress are conclusive on appeal unless the evidence contained in the record preponderates against the trial court's judgment. *State v. Killebrew,* 760 S.W.2d 228, 233 (Tenn.Crim.App.1988); *State v. Roberts,* 755 S.W.2d 833, 837 (Tenn.Crim. App.1988). Since there is material evidence contained in the record to support the trial judge's findings of fact, this Court is required to affirm his judgment in this regard. *State v. Killebrew,* supra.

■ Dulsworth also filed a motion to suppress the in-court identification of the victim. The trial court denied the motion at the conclusion of the suppression hearing. In this Court, Dulsworth contends that the trial court should have granted his motion to suppress because the pretrial confrontation between the victim and the appellant was suggestive; and the suggestiveness of the confrontation rendered the identification unreliable.

The victim advised the sheriff on the evening in question that he could identify the two men who entered his home. However, no effort was made to conduct a lineup or present the victim with an array of photographs to see if he could identify either Dulsworth or Stewart. When the victim entered the courtroom shortly before the preliminary hearing was to commence, he immediately recognized Dulsworth as the person who stabbed and robbed him at knife-point. He also identified Likens during the course of the preliminary hearing. There were other people in the courtroom when the victim identified both Dulsworth and Likens.

No one asked the victim to make an identification or suggested to the victim that Dulsworth was one of the individuals who entered his home. To the contrary, he had seen Dulsworth before. Dulsworth was married to his nephew's former wife; and the victim had been to the home where they resided with his nephew. Consequently, the identification made by the victim prior to the preliminary hearing was not suggestive; and the trial court properly denied the motion to suppress the in-court identification made by the victim.

■ Dulsworth also contends that the $41.00 found in his jail cell should have been suppressed. The State did not introduce the money found in Dulsworth's cell. We parenthetically note that the trial judge was correct in ruling that this evidence was admissible. A prisoner does not have a justifiable, reasonable or legitimate expectation of privacy which is subject to invasion by law enforcement officers, as the United States Supreme Court ruled in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See State v. Williams,* 690 S.W.2d 517 (Tenn.1985). The Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of a prison cell. *Palmer,* 468 U.S. at 525–526, 104 S.Ct. at 3200, 82 L.Ed.2d at 403.

This issue is without merit.

### INSTRUCTION ON TESTIMONY OF AN ACCOMPLICE

Dulsworth contends that the trial judge committed prejudicial error in charging the jury regarding the law governing the testimony of an accomplice. The challenged portion of the charge states:

*In this case, it is a question for the jury to determine whether the witness Elmer Likens was an accomplice in this crime.* If you find from the proof that the witness was an accomplice, then the defendant cannot be convicted upon the uncorroborated testimony of this witness. If you find that the witness was not an accomplice, then you will judge the weight to be given this testimony, just as you do with that of the other witnesses in the case. *In this case, the Court charges you that the witness, Elmer Likens, was an accomplice in this alleged crime,* and before the defendants can be convicted, you must find that this accomplice's testimony has been sufficiently corroborated. [Emphasis added].

The balance of the instruction regarding the testimony of an accomplice was a complete and thorough statement of the law.

An examination of the Tennessee Pattern Instructions [4] reveals how the trial judge came to include the contradictory statements that are contained in the paragraph set forth above. The instruction on the testimony of an accomplice found in the Tennessee Pattern Instructions has two proposed concluding paragraphs. The first proposed paragraph is to be given when the question of whether the witness is an accomplice is disputed. The second proposed paragraph applies when the issue of whether the witness is an accomplice is undisputed. In this case, the trial judge erroneously encompassed both concluding paragraphs in his charge rather than deleting the proposed paragraph which was not applicable.

■ The question of who decides whether a witness is an accomplice hinges upon the facts present in each case. When it is undisputed that that witness participated in the criminal offense with the accused, the question is one of law for the trial court to resolve. *See Ripley v. State*, 189 Tenn. 681, 687, 227 S.W.2d 26, 29 (1950); *Bethany v. State*, 565 S.W.2d 900, 903 (Tenn.Crim.App.1978); *Conner v. State*, 531 S.W.2d 119, 123 (Tenn.Crim.App. 1975). However, when the evidence ad-

duced during the trial is in dispute or susceptible to an inference that the witness may or may not be an accomplice, the question is one of fact for the jury to resolve. *See Ripley v. State*, supra; *Bethany v. State*, supra; *Bright v. State*, 563 S.W.2d 908, 910 (Tenn.Crim.App.1977); *Conner v. State*, supra. In this case, the record makes it clear that Likens was an accomplice of the appellants; and the trial court should have only charged the second proposed paragraph to the effect that Likens was an accomplice as a matter of law.

■ We parenthetically note that the pattern instructions have not been officially approved by our Supreme Court or the Tennessee General Assembly. Consequently, these instructions should only be used by a trial judge after he has made a careful analysis of the case on trial. As our Supreme Court said in *State v. Martin*, 702 S.W.2d 560 (Tenn.1985):

> They are merely "patterns" or suggestions and serve no other purpose. It is the responsibility of the trial judge to prepare the jury instructions, and while previously printed forms may be convenient, these must be revised or supplemented if necessary in order to state the applicable law fully and accurately.

702 S.W.2d at 564, n. 5.

■ Based upon our review of the entire instruction as well as the record, we conclude that the error committed by the trial judge was harmless. Tenn.R.App.P. 36(b); Tenn.R.Crim.P. 52(a). We cannot say, considering the entire instruction and the overwhelming evidence of the appellant's guilt, that this error more probably than not affected the judgment or resulted in prejudice to the judicial process.

This issue is without merit.

## RANGE OF PUNISHMENT FOR ASSAULT WITH INTENT TO COMMIT MURDER FIRST DEGREE

Dulsworth filed a pretrial motion requesting that the trial court charge the jury as to the possible penalties for the

4. T.P.I.—Crim. § 37.09 (2nd ed. 1988).

offenses charged in the indictment as well as all lesser included offenses. *See* T.C.A. § 40–35–201(b). The trial court granted the motion.

The trial court charged the jury that the punishment for the offense of assault with intent to commit murder in the first degree, accompanied by bodily injury, "carries a possible punishment of five years to life." *See* T.C.A. § 39–2–103(b). Dulsworth contends this instruction was erroneous because the indictment did not allege, and, therefore, did not give him notice, that the victim suffered bodily injury within the meaning of T.C.A. § 39–2–103(b). He argues that the trial court should have instructed the jury that the punishment for this offense was imprisonment for not less than five years nor more than twenty-five years in the Department of Correction. We disagree.

The indictment returned by the Macon County Grand Jury against the appellants alleged in part:

> [O]n or about the 17th day of January, 1987, ... the said Timmy Lydell Dulsworth, Roger Cordell Stewart, and Elmer Lee Likens did unlawfully, feloniously, and with malice aforethought assault Elmer Saddler by stabbing him numerous times about the neck and chest with a knife, with the intent to commit Murder in the First Degree in violation of Section 39–2–103 T.C.A., and against the peace and dignity of the State of Tennessee.

As can be seen from a reading of the salient parts of indictment, the appellant was placed on notice that he was accused of assault with the intent to commit murder in the first degree, accompanied by bodily injury, as proscribed by T.C.A. § 39–2–103(b). The indictment alleges that the named individuals stabbed the victim several times about his chest and neck. A stab wound constitutes "bodily injury" within the meaning of T.C.A. § 39–2–103(b). Dulsworth's reliance upon *Church v. State*, 206 Tenn. 336, 333 S.W.2d 799 (1960), and *State v. Lindsay*, 637 S.W.2d 886 (Tenn.Crim.App.1982), is misplaced.

The trial court properly charged the range of punishment for the offense of assault with the intent to commit murder first degree, accompanied by bodily injury; and the trial court properly sentenced the defendant within the sentence range provided in T.C.A. § 39–2–103(b).

This issue is without merit.

### FAILURE TO CHARGE LESSER INCLUDED OFFENSES

Dulsworth contends the trial court committed error in failing to charge all of the lesser included offenses contained in the principal offense charged in the indictment, assault with the intent to commit murder in the first degree. The trial court charged the lesser included offenses of aggravated assault and assault and battery.

While Dulsworth does not state what lesser included offenses the trial court should have charged, the record reflects that Dulsworth's attorney made an oral request for an instruction on the lesser included offense of attempt to commit a felony. The trial court refused to include such an instruction in the charge given the jury.

The appellant's *oral* request for the instruction did not comport with Rule 30(a), Tennessee Rules of Criminal Procedure. This Rule requires that a party submit special requests for instructions in written form: In *State v. Mackey*, 638 S.W.2d 830, 836 (Tenn.Crim.App.1982), this Court ruled that a trial court will not be placed in error for refusing to give an instruction which does not comport with the Rule. However, we opt to address this issue on the merits.

The facts contained in the record do not support an instruction for attempt to commit a felony. The record reflects that Dulsworth and Likens entered the home of the victim. Dulsworth stabbed the victim several times about the chest and neck and took the victim's wallet containing approximately $140.00. Dulsworth, Stewart and Likens then left the victim's residence. In summary, the record reflects two completed offenses, namely, assault

with the intent to commit murder in the first degree and robbery with a deadly weapon.

 A trial court is not required to charge a jury on a lesser included offense unless there is evidence contained in the record to support a conviction for that lesser included offense. *State v. Mellons,* 557 S.W.2d 497, 499 (Tenn.1977); *Whitwell v. State,* 520 S.W.2d 338, 343 (Tenn.1975); *State v. Dobbins,* 754 S.W.2d 637, 642–643 (Tenn.Crim.App.1988); *State v. Rhoden,* 739 S.W.2d 6, 11 (Tenn.Crim.App.1987). Consequently, an accused is not entitled to an instruction on attempt to commit a felony when the criminal offense has been completed. *Johnson v. State,* 506 S.W.2d 815, 816 (Tenn.Crim.App.1973); *Murphy v. State,* 4 Tenn.Crim.App. 610, 612, 475 S.W.2d 182, 183 (1971); *Levasseur v. State,* 3 Tenn.Crim.App. 513, 520–521, 464 S.W.2d 315, 319 (1970).

This issue is without merit.

### RELEVANCY OF EVIDENCE

Dulsworth contends that the trial court allowed the State on four separate occasions to introduce evidence which was either not relevant or the prejudicial effect outweighed its probative value.

We have examined the evidence in the context of the issues to be determined by the jury and the remaining evidence introduced at the trial. In each instance, the evidence was relevant and the prejudicial effect of the evidence did not outweigh its probative value.

 Any evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law.

This issue is without merit.

### INSTRUCTIONS ON IDENTITY AND VOLUNTARY INTOXICATION

 The trial judge incorporated in his charge an instruction on voluntary intoxi-

cation. *See* T.P.I.—Crim. § 36.07 (2nd ed. 1988). The defendant contends that the trial court should have charged T.P.I.—Crim. § 36.08 (2nd ed. 1988) instead. He argues that the instruction given should have gone further since the appellants were charged with assault with intent to commit murder first degree.

The instruction given was accurate. While counsel requested an instruction on voluntary intoxication, there was no special request submitted to the court.

If the appellant was not satisfied with the instruction given by the trial court, it was his duty to submit a special request to the trial judge for his consideration. Having failed to do so, the defendant cannot now contend that this constituted error. *See* Tenn.R.App.P. 36(a); *Bolton v. State,* 591 S.W.2d 446, 448 (Tenn.Crim.App.1979). It has long been established in this jurisdiction that the mere meagerness of an instruction does not constitute reversible error in the absence of a special request for an additional instruction. *State v. Haynes,* 720 S.W.2d 76, 85 (Tenn.Crim.App.1986); *State v. Rollins,* 605 S.W.2d 828, 832 (Tenn.Crim.App.1980).

 Dulsworth also contends that the trial judge failed to charge the jury on the issue of identity. *See* T.P.I.—Crim. § 37.17.[5] He argues that there was an issue of fact regarding the identity of the appellants; and the issue was material to his defense.

The victim advised the sheriff on the evening in question that he could identify the two men who entered his residence. The victim had seen Dulsworth before, as indicated above. The victim immediately identified Dulsworth and Likens when he entered the courtroom shortly before the preliminary hearing was to commence. He was also able to identify Dulsworth during the trial.

---

5. T.P.I.—Crim. § 37.17 provides: "The state must prove beyond a reasonable doubt the defendant's identity as the person who committed the crime. If, after considering all the evidence in this case, you the jury are not satisfied beyond a reasonable doubt that the defendant is this person, then you must find him not guilty."

Likens testified that he accompanied Stewart and Dulsworth to the victim's residence, and that Dulsworth and Likens entered the victim's residence. Later, the three went to the home of Stewart's former wife. All three men were arrested either inside the residence, immediately outside the residence, or in close proximity to the residence.

Stewart testified that he went to the home of the defendant in the company of both Dulsworth and Likens. He further stated that Dulsworth and Likens went inside the residence. He simply denied having any knowledge that they were going to rob the victim.

The trial judge charged the jury on reasonable doubt. The instruction stated in part:

> The State must prove beyond a reasonable doubt all the elements of the crimes charged and that the crimes, if in fact committed, were committed by the defendants and that they were committed before the finding of and returning of the indictment in this case, and that they were committed in Macon County, Tennessee. [Emphasis added].

While the trial judge should have given a more detailed instruction on the issue of identity, the failure to do so, in the absence of a special request, does not constitute reversible error. Furthermore, the identity of Dulsworth was clearly established in the record. Consequently, if the trial court can be said to have committed error in failing to instruct on the issue of identity, the error was harmless beyond a reasonable doubt. Tenn.R.Crim.P. 52(b).

This issue is without merit.

## STEWART'S MOTION TO SUPPRESS

Stewart contends that the trial court committed error of prejudicial dimensions in overruling his motion to suppress a bloody $50.00 bill taken from his pants pocket on the evening in question. He argues that the search and seizure were incident to an illegal arrest.

■ The facts known to the police when Stewart was arrested did not directly link him to the commission of the two offenses alleged in the indictment. As previously indicated, two men saw a car matching the description of Stewart's vehicle on the highway near the victim's residence on the evening in question. However, there were no other facts from which the police could conclude that Stewart, Dulsworth and Likens went to the victim's residence and committed the offenses. Consequently, the officers did not have probable cause to arrest Stewart.

■ Based upon our review of the entire record in this cause, we conclude that the admission of the $50.00 bill into evidence was harmless beyond a reasonable doubt. The evidence of Stewart's guilt is overwhelming. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

This issue is without merit.

## INSTRUCTION ON AIDING AND ABETTING

■ A portion of the trial judge's instruction on the law governing aiding and abetting was omitted. When the jury returned with a question, it was brought to the trial judge's attention out of the presence of the jury that he had omitted part of the instruction. The trial judge then read that portion of the instruction which he had omitted.[6] In summary, the jury was given a complete instruction by the trial judge on aiding and abetting.

Based upon a reading of the entire record, we are of the opinion that Stewart was not prejudiced by the trial judge's error. This is evidenced by the fact that Stewart was acquitted of the offense of assault with the intent to commit murder first degree.

This issue is without merit.

---

6. A trial judge has the authority to give supplemental instructions when the jury poses a question that indicates the jurors are confused regarding a question of law. See State v. Moore,

751 S.W.2d 464, 467–468 (Tenn.Crim.App.1988); State v. McAfee, 737 S.W.2d 304, 307 n. 2 (Tenn. Crim.App.1987).

## SENTENCING ISSUES

Dulsworth contends that the trial court committed error of prejudicial dimensions by sentencing him as a persistent offender. T.C.A. § 40–35–106 (Supp.1988). He argues that he has not been convicted of the requisite number of felonies because a guilty plea, which resulted in one of the convictions proven by the State, is constitutionally infirm.

Before a defendant may be sentenced as a persistent offender within the meaning of the Tennessee Criminal Sentencing Reform Act of 1982,[7] the judge must find beyond a reasonable doubt that the defendant has been previously convicted of (a) two or more felonies within five (5) years immediately preceding the commission of the offense for which the defendant was convicted;[8] or (b) four or more felonies within ten (10) years immediately preceding the commission of the offense for which the defendant was convicted.[9] In the case *sub judice*, Dulsworth was convicted of two felonies within the five year period which preceded the commission of the offense for which he was convicted.

■ Dulsworth committed the offenses in this case on January 17, 1987. The record reflects that he was convicted of second degree burglary and strong arm robbery[10] in Macon County, Tennessee, on March 17, 1981. He was released from the penitentiary on October 22, 1982. Since the time Dulsworth spent in prison is not to be considered when calculating the five year period,[11] these convictions are within the five year period. The record further reflects that he was convicted of grand larceny in Sumner County, Tennessee, on July 1, 1983. Thus, the record supports the finding of the trial court that Dulsworth was a persistent offender beyond a reasonable doubt.

The question of whether Dulsworth's guilty plea to the offense of second degree burglary in Trousdale County on November 28, 1983, is constitutionally infirm has been rendered moot by our determination that there are two other convictions which fall within the five year period. As a result, it is not necessary for this Court to resolve this issue.

■ Stewart contends that the sentence imposed by the trial court is excessive. He argues that the trial court failed to properly weigh the mitigating and enhancing factors and apply the principles of sentencing. We agree.

A review of the record reveals that the trial judge did not address the purposes of the Tennessee Criminal Sentencing Reform Act of 1982,[12] the sentencing considerations enumerated in the Act,[13] the mitigating factors that might be present,[14] or the enhancing factors which may also be present.[15] As the Supreme Court stated in *State v. Moss*, 727 S.W.2d 229 (Tenn.1986), there is "[a] panoply of statutory provisions [which guide] sentencing courts in the exercise of their discretion." 727 S.W.2d at 237. As this Court stated in *State v. Gauldin*, 737 S.W.2d 795 (Tenn. Crim.App.1987):

> The Tennessee Criminal Sentencing Reform Act of 1982 makes it clear that the record of the sentencing hearing "shall include specific findings of fact upon which application of the sentencing principles were based." T.C.A. § 40–35–209(c). This provision is mandatory. *See Stubbs v. State*, 216 Tenn. 567,

7. T.C.A. § 40–35–106 (Supp.1988).

8. T.C.A. § 40–35–106(a)(1) (Supp.1988).

9. T.C.A. § 40–35–106(a)(2) (Supp 1988).

10. The record does not reflect whether these two offenses were "committed as part of a single course of conduct within a period of twenty-four (24) hours during which there was no substantial change in the nature of the criminal objective ..." T.C.A. § 40–35–106(b)(1). However, we are not required to make this determination in view of Dulsworth's conviction for grand larceny on July 1, 1983, in Sumner County, Tennessee.

11. T.C.A. § 40–35–106(b)(2) (Supp.1988).

12. T.C.A. § 40–35–102.

13. T.C.A. § 40–35–103 (Supp.1988).

14. T.C.A. § 40–35–110.

15. T.C.A. § 40–35–111. *See State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn.Crim.App.1987).

393 S.W.2d 150, 154 (1965); *Blankenship v. State*, 223 Tenn. 158, 443 S.W.2d 442, 445 (1969). The fact that this Court must review the sentence imposed by the trial court *de novo* without a presumption of correctness does not relieve the trial judge from complying with this mandate. See T.C.A. § 40–35–402(d). 737 S.W.2d at 798.

In view of the deficiency in the record, this cause must be remanded to the trial court for a new sentencing hearing as to Stewart. If either party is dissatisfied with the sentence imposed by the trial court, they may appeal as of right to this Court.[16]

Stewart's conviction for the offense of robbery with a deadly weapon is affirmed.

However, this cause is remanded to the trial court for a new sentencing hearing as to Stewart.

The judgment of the trial court as to Dulsworth's convictions and sentences is affirmed.

REID, J., and ALLEN R. CORNELIUS, Jr., Special Judge, concur.

16. T.C.A. § 40–35–402(d) (Supp.1988) and 40–35–403.