IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2004

## STATE OF TENNESSEE v. DARRELL WAYNE SYLER

**Direct Appeal from the Criminal Court for Hamilton County
Nos. 238454, 238455 & 238456     Rebecca Stern, Judge**

---

**No. E2003-02626-CCA-R3-CD Filed September 13, 2004**

---

The Defendant, Darrell Wayne Syler, was convicted after a jury trial of two counts of rape of a child, one count of attempted child rape, one count of aggravated sexual battery and thirteen counts of especially aggravated sexual exploitation of a minor.  The Defendant was subsequently sentenced to an effective term of twenty-nine years in the Department of Correction.  In this appeal, the Defendant contends that the trial court erred in admitting a homemade videotape depicting the Defendant and his wife engaged in sex acts, and that his convictions for especially aggravated sexual exploitation must be reversed because the State failed to establish one of the statutory elements of that offense.  We reduce the Defendant's sentence to an effective term of twenty-eight years, and otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Samuel F. Robinson, III (on appeal), and Ardena J. Garth, District Public Defender, Chattanooga, Tennessee (at trial), for the appellant, Darrell Wayne Syler.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; William H. Cox, III, District Attorney General; and Yolanda D. Mitchell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was married to the victim's mother and the victim lived with them. At the time of her testimony, the victim, JAW,[1] was eleven years old. She testified that when she was ten, the Defendant came into the bathroom while she was taking a bath and "[m]ade [her] suck his penis." When she got out of the bathtub, the Defendant wrapped her in her mother's robe and they got on the Defendant's bed. The Defendant then made the victim "bite his titty" and the Defendant licked the victim "[f]rom the private up," including her "boobies." The Defendant then got on his back and lifted the victim up and placed her over him. He asked her if he "could stick his weenie" in her "hole,"and his penis touched her vaginal opening. She told him that it was "too big" and he lifted her off.

On another occasion, the Defendant came into the victim's bedroom and discovered that she had wet the bed. He told her to get onto the couch in the living room, which she did. As she was lying there, the Defendant came in and laid down beside her. He was wearing boxer shorts. The victim testified that the Defendant's "private" was sticking out of his boxers and he asked her to "[s]tick it back in" his shorts, which she did.

The victim also testified that the Defendant took photographs of her while she was naked and lying on the bed. These photographs were taken with a digital camera, she said. Thirteen photographs of the victim lying naked on a bed were introduced at trial.

The victim testified that the Defendant showed her photographs of her mother posing naked. The Defendant also showed her a videotape of her mother "[s]ucking [the Defendant's] private."

The victim admitted that she did not like the Defendant, stating that he was "mean" to her. The victim also admitted that she had engaged in sexual activity with a nine-year-old male friend, and that the Defendant later found out about it.

Detective Robert Starnes participated in a search of the Defendant's residence. There, he confiscated, among other things, three videotapes from a safe in the master bedroom. The safe was locked but either the Defendant or the victim's mother provided the detective with a key. Det. Starnes later viewed the three videotapes. One of them contained a video record of the contents of the house, apparently for insurance purposes. The second tape was "a pornographic . . . homemade videotape made by [the Defendant] and [the victim's mother] . . . [in which] they are engaging in various sexual acts and being video recorded in the privacy of their home." The third tape also contained "pornographic material" depicting the victim's mother "doing some very suggestive sexual acts." Det. Starnes testified that the victim was shown the second of these tapes and that she "identified [it as] the tape that she was showed[sic] by [the Defendant], her mother performing sexual acts or oral sex on [the Defendant]." This second videotape was then admitted into evidence.

---

[1]It is the policy of this Court to identify victims of sex crimes by their initials only.

-2-

Also recovered in the search was a digital camera with discs. United States Secret Service Special Agent Mark Sletto testified that he performed a forensic evaluation on items collected from the Defendant's residence, including the discs recovered with the digital camera. On one of these discs, he discovered numerous photographic images that had been deleted but not yet overwritten. Accordingly, he was able to recover these images using highly specialized software. From these images were produced thirteen photographs of the victim lying naked on a bed. Also on the disc, but not deleted, were photographs of a car crash.

Pediatric nurse practitioner Kathy Spada testified that she examined the victim on August 4, 2001. During the examination she determined that the victim's hymen had been partially ruptured in such a manner as to indicate that a "large bore object" had penetrated the victim's vaginal opening.

The Defendant testified and flatly denied ever having engaged in any sexual activity with the victim. He admitted that he had taken the photographs of the victim, but explained that he had done this after she had told him that she had engaged in some sexual play with a boy. The Defendant stated that he wanted to examine her body for any resulting injuries, and decided that the best way to put the victim at ease for this process was to have her pretend to be a model. During the course of the photographs, he was able to examine her body and determined that she was not injured. The Defendant conducted this examination himself because the victim's mother was at work and he was afraid that any injuries might heal if he waited until she got home.

The Defendant also denied having deliberately shown the victim the pornographic videotape. He explained that the tapes had become mixed in with regular tapes and that he wanted to sort them out. Accordingly, he was running them through the VCR so that he could label and segregate the tapes, when the victim accidently saw several seconds of the tape showing her mother performing sex acts.

The jury convicted the Defendant of all crimes charged. The trial court subsequently sentenced the Defendant as a Range I standard offender to twenty-one years for each of the two child rapes; eight years for the attempted child rape; eight years for the aggravated sexual battery; and eight years for each of the especially aggravated sexual exploitation of a minor counts. The sentences were ordered to run in such a manner as to result in an effective sentence of twenty-nine years.

**ADMISSION OF VIDEOTAPE**

The Defendant argues that the videotape of him and his wife performing sex acts was irrelevant because it "in no way involved the victim" and should therefore not have been admitted into evidence. See Tenn. R. Evid. 402 ("Evidence which is not relevant is not admissible."). We disagree.

Tennessee Rule of Evidence 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence." In this case, one of the facts of consequence was whether the Defendant was engaging in conduct of a sexual nature with his ten-year-old step-daughter. Her testimony that the Defendant showed her a videotape containing explicit sexual activity is probative of this fact. The admission of the videotape itself is also corroborative of the victim's testimony and therefore bolsters her credibility. A witness's credibility is always relevant. The admitted videotape was therefore relevant on at least two grounds, and this issue is therefore without merit.

The Defendant also contends that the videotape should not have been admitted on the basis that its probative value was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Again, we disagree. While we certainly recognize that the jury may have considered the Defendant's actions in videotaping himself and his wife to be disagreeable, it was the subsequent use to which the Defendant put the video that was particularly prejudicial. As this Court has previously recognized, however, "[a]ny evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law." State v. Dulsworth 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989). Rather, to be inadmissible, the evidence must be unfairly prejudicial. "[T]he mere fact that evidence is particularly damaging does not make it unfairly prejudicial." State v. Gentry, 881 S.W.2d 1, 7 (Tenn. Crim. App. 1993). Rather, evidence which is unfairly prejudicial is that which has an undue tendency to suggest decision on an improper basis, frequently, though not necessarily, an emotional one. See State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978). Thus, this Court has determined that evidence should not be admitted when its primary purpose "is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror.'" State v. Collins 986 S.W.2d 13, 20 (Tenn. Crim. App. 1998).

The decision to admit or exclude evidence is generally left to the trial court's discretion. See State v. James, 81 S.W.3d 751, 760 (Tenn. 2002). We see no abuse of discretion here. A panel of this Court has previously held that pornography used by a defendant to seduce his victims is relevant and admissible where the victims could identify the specific magazines and videotapes. See State v. McCary, 119 S.W.3d 226, 246 (Tenn. Crim. App. 2003). We draw the same conclusion in this case. The trial court did not err in admitting the videotape and this issue is therefore without merit.

Although not complained of by the Defendant, we note that the videotape was not shown to the jury in open court. Rather, the trial court allowed the jury the option of viewing the tape during deliberations and the videotape was sent into the jury room along with the other exhibits. The record contains no indication that the jury actually viewed the tape. We recently held that, where a pornographic videotape was properly admitted, the trial court committed error when it allowed the jurors to decide for themselves whether or not they wanted to view the evidence. See State v. Brian Keith Jackson, No. E2003-00606-CCA-R3-CD, 2004 WL 1170029, at *4 (Tenn. Crim. App., Knoxville, May 26, 2004). Rather, "[o]nce the trial court determined that the videotape or portions thereof were relevant and admissible, it should have published the evidence to the jury." Id. The same result obtains here. We have reviewed the videotape and agree with the trial court that it was

both relevant and admissible. Accordingly, it should have been played for the jury in open court. Nevertheless, we have no difficulty in determining that the trial court's error in this regard was harmless and does not affirmatively appear to have affected the result of the trial on its merits. See Tenn. R. Crim. P. 52(a). The Defendant is entitled to no relief on this issue.

## DEFINITION OF "MATERIAL"

In his second issue, the Defendant contends that the State failed to establish one of the statutory elements of the crime of especially aggravated sexual exploitation of a minor. Tennessee Code Annotated section 39-17-1005, which the Defendant was convicted of violating, provides that

> It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance or in the production of material which includes the minor engaging in:
> > (1) Sexual activity; or
> > (2) Simulated sexual activity that is patently offensive.

Tenn. Code Ann. § 39-17-1005(a). In support of its prosecution, the State introduced thirteen photographs of the victim, taken while she was naked and which showed her breasts and genitals.[2] These photographs were recovered from a computer disc in spite of the fact that the images had been previously deleted. Special Agent Mark Sletto testified that special software was necessary in order to recover these deleted images from the disc.

The Defendant now contends that the State failed to prove that he permitted the victim to participate in the production of material in which the victim engaged in sexual activity because the computer disc does not meet the definition of "material." Tennessee Code Annotated section 39-17-1002 defines "material" as, among other things, "Any text or image stored on a computer hard drive, a computer disk of any type, or any other medium designed to store information for later retrieval." Tenn. Code Ann. § 39-17-1002(2)(C). The Defendant argues that, since he deleted the images from the computer disc, and since they were therefore no longer available to him for later retrieval, the disc does not meet the definition of "material." We are not persuaded. The disc from which the images were recovered was certainly one designed to store information for later retrieval, whether the Defendant had the capacity to retrieve the information or not. This contention is without merit.

## SENTENCE UNDER BLAKELY

Although not raised by either party, we are constrained to address the Defendant's sentence in light of the United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004). In Blakely, the high court struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" after the judge made a post-trial determination that certain statutory enhancement factors existed. The Supreme Court determined that, under the federal constitution, the defendant's sentence could be increased

---

[2]For the purposes of this offense, "sexual activity" is defined as including the "[l]ascivious exhibition of the female breast or the genitals or pubic area of any person." Tenn. Code Ann. § 39-17-1002(7)(G).

only if the enhancement factors relied upon by the judge were based on facts reflected in the jury verdict or admitted by the defendant. See id., 124 S.Ct. at 2537. The Court concluded that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." 124 S.Ct. at 2543 (latter emphasis added).

The Blakely decision calls into question the validity of Tennessee's sentencing scheme, insofar as that scheme permits trial courts to increase a defendant's presumptive sentence based upon enhancement factors found by the trial judge. For instance, in this case the Defendant was convicted of two Class A felonies and sixteen Class B felonies. He was sentenced as a Range I standard offender. The presumptive sentence for a standard offender convicted of a Class A felony is twenty years. See Tenn. Code Ann. §§ 40-35-112(a)(1); 40-35-210(c). The presumptive sentence for a standard offender convicted of a Class B felony is eight years. See id. §§ 40-35-112(a)(2); 40-35-210(c). Here, the Defendant was sentenced to twenty-one years for each of his Class A felonies, one year above the presumptive sentence, based upon several enhancement and mitigating factors found by the trial court at the sentencing hearing. The Defendant was sentenced to the statutory presumptive sentence of eight years for each of his Class B felonies.

The trial court enhanced the Defendant's sentences for the Class A felonies on the bases that the victim was "particularly vulnerable because of age or physical or mental disability," and the Defendant "abused a position of public or private trust." Tenn. Code Ann. § 40-35-114(5), (16). Neither of these enhancement factors is reflected in the jury's verdict, nor was either factor admitted by the Defendant. Pursuant to Blakely, the trial court's enhancement of the Defendant's sentences on these bases was therefore erroneous. See State v. Michael Wayne Poe, No. E2003-00417-CCA-R3-CD, 2004 WL 1607002, at *10 (Tenn. Crim. App., Knoxville, July 19, 2004) (holding that the rule in Blakely precludes application of enhancement factors (5) and (16) where they have not been submitted to the jury and have not been admitted by the defendant).

Pursuant to Blakely, the Defendant's sentences for his Class A felonies should not have been increased above the statutory presumptive sentence based upon statutory enhancement factors (5) and (16). Accordingly, we reduce the Defendant's sentences for his two Class A felonies from twenty-one years to twenty years. We leave undisturbed the trial court's determination of the manner in which the Defendant's sentences shall be served. Accordingly, the Defendant's effective sentence is modified to twenty-eight years.

We reduce the Defendant's sentences for each of his two Class A felonies to twenty years. In all other respects, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

-6-