IN THE TENNESSEE COURT OF CRIMINAL APPEALS

AT JACKSON

SEPTEMBER 1996 SESSION

FILED

May 2, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,  )
) No. 02-C-01-9601-CR-00002
    Appellee,  )
) Shelby County
v.  )
) Jon Kerry Blackwood, Judge
) Sitting by Designation
PRESTON CARTER,  )
) (Death Penalty)
    Appellant.  )

FOR THE APPELLANT:

Glenn I. Wright
Suite 800
200 Jefferson Avenue
Memphis, TN 38103

Howard L. Wagerman
200 Jefferson Avenue, Suite 1313
Memphis, TN 38103

FOR THE APPELLEE:

Charles W. Burson
Attorney General and Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Amy L. Tarkington
Assistant Attorney General
450 James Robertson Pkwy.
Nashville, TN 37243-0493

John W. Pierotti
District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

Phillip Gerald Harris
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

Reginald R. Henderson
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

**O P I N I O N**

The appellant, Preston Carter, (defendant), was convicted of two counts of murder in the first degree[1] following his pleas of guilty to these two offenses. A jury of his peers set his punishment at death by electrocution for both offenses. The jury found one aggravating circumstance, namely, the murders were especially heinous, atrocious, or cruel in that they involved torture or serious physical abuse beyond that necessary to produce death.[2]

The defendant presents eight (8) issues for review. He contends (1) the jury's verdict was not authorized by law and is facially void, (2) the indictment omitted an essential element of felony murder, (3) aggravating circumstance (i)(5)[3] is unconstitutionally vague and was unconstitutionally applied to the facts of this case, (4) the trial court erred by permitting the state to introduce irrelevant, inflammatory evidence, (5) the trial court erred by denying his motion to suppress his confession, (6) the trial court erred in refusing to permit the jury to consider life without the possibility of parole as an alternative punishment for first degree murder, (7) the trial court erred by permitting the state to engage in improper argument during final summation, and (8) the death penalty statutes are unconstitutional.

After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court the convictions and the death sentences should be affirmed.

On Thursday evening, May 27, 1993, the defendant, Lewis Anderson, and Curly Ivery, were present when Tony, a relative of Anderson's, related he was purchasing illicit narcotics at an apartment located in a large apartment complex. Tony opined it would be "real easy for us to go in there and stick up for the dope and the money." When the defendant and his co-defendants, Anderson and Ivery, expressed interest in the robbery scheme, Tony took the three men to the apartment complex, used the access code to open

---

[1]Tenn. Code Ann. § 39-13-202(a)(2)(1991).

[2]Tenn. Code Ann. § 39-13-204(i)(5)(1991).

[3]Tenn. Code Ann. § 39-13-204(i)(5)(1991).

2

the gates, gained entry in the complex, and showed the three men the apartment where the illicit drugs were being sold. The apartment indicated was the apartment of Thomas and Tensia Jackson.[4] Tony told the co-defendants all they had to do was knock on the door "and this girl would open the door to just anyone who said they wanted to buy some [illicit drugs]."

On Friday morning, May 28, 1993, at approximately 12:30 a.m., the defendant, Anderson, and Ivery went to the apartment indicated by Tony with the intent to rob the victims of their money and illicit narcotics. They were in a stolen automobile. The defendant and Anderson went to the door of the apartment. Ivery, apparently having second thoughts about participating in the robbery, remained in the vehicle. Anderson knocked on the door of the apartment. When Mr. Jackson appeared at the door, Anderson told him he "wanted to get something," meaning illicit drugs. Mr. Jackson told Anderson: "I don't have anything, what [are] you talking about?" When Mr. Jackson refused to open the door, the defendant realized they had gone to the wrong apartment. Nevertheless, the defendant and Anderson kicked the door open and entered the apartment. The defendant asked Mr. Jackson where he kept the money and illicit drugs. Mr. Jackson appeared to be confused. He did not know what the defendant was requesting. Mr. Jackson was made to get into a closet located in a child's bedroom.

The defendant ransacked the apartment. The mattress was pulled from the bed in the master bedroom. Drawers had been pulled from chests of drawers and vanities. The contents of the drawers had been dumped on the floor. Apparently, the defendant and Anderson did not find any money or illicit drugs. This gave credence to the defendant's suspicion they were at the wrong apartment.

The defendant went to the closet where Mr. Jackson had been placed. He shot Mr. Jackson with a shotgun just above his right eye as Jackson was squatting or sitting inside the closet. The pathologist testified the cause of death was the gunshot wound to Mr. Jackson's head. The barrel of the shotgun was "near" Mr. Jackson's head when the defendant shot him. Wadding from the shotgun shell was driven into the wound. The

---

[4]Both Mr. and Mrs. Jackson were employed. The autopsy revealed the victims had not ingested any form of illicit drug. Since no large sum of money or illicit narcotics were found in the apartment, it is apparent they were not engaged in drug trafficking.

3

numerous pellets from the shotgun blast struck Mr. Jackson's brain; and, according to the pathologist, his brain exploded. Mr. Jackson's death was instantaneous. The Jacksons' three-year-old child was subsequently found lying on a pillow next to Mr. Jackson. Her nightgown was splattered with blood.

The defendant also shot Mrs. Jackson in the bathroom off the master bedroom. The blast entered Mrs. Jackson's head in and around her left eye. The pathologist testified the cause of death was the gunshot wound to Mrs. Jackson's head. Again, the barrel of the shotgun was "near" Mrs. Jackson's head when the defendant shot her. Like Mr. Jackson, the numerous pellets from the shotgun blast struck her brain; and, according to the pathologist, her brain exploded. Mrs. Jackson's death was also instantaneous.

Mr. Jackson and his brother, Kenneth Jackson, worked for the same company. Kenneth Jackson arrived at the Jacksons' apartment at approximately 3:45 a.m. to take Mr. Jackson to work. Kenneth Jackson noticed the kitchen door was open and the lights were on inside the kitchen. When Mr. Jackson did not exit the apartment after Kenneth Jackson honked his car horn, Kenneth Jackson felt something was amiss. Jackson and Gernis James entered the apartment. When they saw the condition of the apartment and were unable to find either Mr. or Mrs. Jackson, Kenneth Jackson called Mrs. Jackson's brother, Derrick Lot, and the Memphis Police Department.

Lot and Kenneth Jackson reentered the apartment. They found Mr. Jackson in the closet of the child's bedroom. He was dead. They also found the Jacksons' three-year-old child in the closet with her father. In the master bedroom, a mattress blocked access to the adjoining bathroom. They did not move the mattress. The police found Mrs. Jackson's body in the bathroom. Mr. Jackson's wallet and the child's purse were found outside the front door of the apartment.

The defendant was arrested on the evening of May 28, 1993. He gave a statement to the police admitting what occurred. He identified himself as the person who killed Mr. and Mrs. Jackson. The shotgun used to kill Mr. and Mrs. Jackson was found in the defendant's apartment. He admitted using this weapon to kill the two victims.

The defendant introduced evidence in mitigation. He was 24 years of age when he testified at the sentencing hearing. He has an eighth grade education. He scored a 75

on a psychological test indicating a "borderline intellectual functioning" level. The other defense witnesses established the defendant was the product of a broken home, and he was not a violent person. He enjoyed spending time with his children, and he treated the children well. They admitted the defendant abused alcohol, and he did not maintain steady employment. The defendant admitted he began using alcohol and marijuana when he was sixteen years of age.

During the sentencing hearing, the defendant testified he was scared during the burglary; and he was not in "his right state of mind" when he murdered Mr. and Mrs. Jackson. He expressed remorse. He stated he understood the enormous amount of pain he caused both the victims' family and his own family. The defendant proclaimed he never intended to shoot anyone.

## I.

## SUFFICIENCY OF INDICTMENTS

The defendant contends the counts of the indictment of which he stands convicted are defective because these counts do not allege the killings were "reckless." He relies upon this Court's decision in State v. Perkinson.[5] The State of Tennessee contends the defendant waived this issue when he entered pleas of guilty to these counts. The state argues Perkinson and other Tennessee cases are distinguishable upon the facts. Moreover, the state asks this Court to adopt a rule of construction formulated by the Supreme Court of Massachusetts.[6]

The Shelby County Grand Jury sitting at Memphis returned two indictments charging the defendant and two co-defendants with the killings of Thomas Jackson and Tensia Jackson. The defendant entered pleas of guilty to first degree murder committed during the perpetration of a felony. The second count of the indictment in case number 93-09760 alleges:

---

[5]867 S.W.2d 1 (Tenn. Crim. App. 1992), per. app. denied (Tenn. 1993).

[6]See Commonwealth v. Bacon, 374 Mass. 358, 372 N.E.2d 780 (1978).

5

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:
>
> PRESTON CARTER
> and
> LEWIS ANDERSON
> and
> CURLY D. IVERY
>
> during the period of time between May 27, 1993 and May 29, 1993, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully kill THOMAS JACKSON during the perpetration of Aggravated Burglary, in violation of T.C.A. 39-13-202, against the peace and dignity of the State of Tennessee.

The second count of the indictment number in case 93-09761 alleges:

> THE GRAND JURORS of the State of Tennessee, duly selected, empaneled, sworn and charged to inquire for the body of the county of Shelby, Tennessee, upon their oath, present that:
>
> PRESTON CARTER
> and
> LEWIS ANDERSON
> and
> CURLY D. IVERY
>
> during the period of time between May 27, 1993 and May 29, 1993, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully kill TENSIA JACKSON during the perpetration of Aggravated Burglary, in violation of T.C.A. 39-13-202, against the peace and dignity of the State of Tennessee.

When the defendant killed the Jacksons, the statute defined first degree felony murder, (felony murder), as the "reckless killing of another committed in the perpetration of, or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping or aircraft piracy."[7]  The Tennessee General Assembly amended this subsection in 1995.[8]  Today, this subsection is defined as the "killing of another committed

---

[7]Tenn. Code Ann. § 39-13-202(a)(2)(1991).

[8]1995 Tenn. Pub. Acts, ch. 460, § 1.

6

in the perpetration of or attempt to perpetrate" one of the enumerated felonies.[9] As can be seen from comparing the pre-1995 version and the 1995 amended version of this subsection, the General Assembly deleted the word "reckless" from the definition of felony murder. In this case, the indictments state the killings were "unlawful" rather than "reckless."

The defendant did not challenge the omission of "reckless" from these two counts of the indictments prior to trial. The issue was not raised during the course of the sentencing phase. It was not raised in the motion for a new trial or amended motion for a new trial. In other words, the defendant has elected to raise the issue for the first time in this Court.

The defendant was aware the counts of the indictments charged the capital offense of felony murder. Two attorneys were appointed to represent the defendant. The state gave notice it intended to seek the death penalty. The defendant filed motions challenging the constitutionality of the death penalty. Defense counsel reminded the trial court this was a capital case during the hearing on the pretrial motions. The prospective jurors were questioned regarding their respective views concerning the death penalty.

Once the jury was empaneled, defense counsel announced to the trial court and the assistant district attorney general for the first time his client was pleading guilty to Count II in both indictments, the felony murder count. The assistant district attorney general demanded that the defendant plead guilty to premeditated murder as alleged in Count I of both indictments. Defense counsel insisted the defendant was pleading guilty to Count II and he would not plead guilty to premeditated murder. The two assistant district attorney generals discussed the matter. They subsequently agreed the defendant could plead guilty to Count II, the felony murder count, in each indictment.

## A.

A criminal prosecution is commenced by the return of an indictment or presentment by the grand jury in the county where the offense occurred. The Tennessee Constitution

---

[9]Tenn. Code Ann. § 39-13-202(a)(2)(Supp. 1996).

7

provides an accused may not "be put to answer any criminal charge but by presentment, indictment or impeachment."[10] The Constitution also requires an indictment or presentment to state "the nature and cause of the accusation."[11] In addition, the statutes of this state address the allegations to be contained in an indictment or presentment. Tenn. Code Ann. § 40-13-202 states:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as "force and arms" or "contrary to the form of the statute" necessary.

While the description of an offense alleged in an indictment or presentment "must be sufficient in distinctness, certainty, and precision to enable the accused to know what offenses he [or she] is charged with and to understand the special nature of the charge he is called upon to answer,"[12] it is not necessary to "amplify and encumber the charge by circumstantial detail and minute description."[13] As a general rule, it is sufficient to state the offense charged in the words of the statute,[14] or words which are the equivalent to the words contained in the statute.[15]

When determining the sufficiency of an indictment or presentment, several factors must be considered. First, a court must consider whether the indictment or presentment alleges the elements of the offense which is intended to be charged. Second, the court must consider whether the indictment or presentment sufficiently apprises the defendant of the offense he is called upon to defend. Third, the trial court must be able to determine

---

[10]Tenn. Const. art. I, §14.

[11]Tenn. Const. art. 1, § 9.

[12]Church v. State, 206 Tenn. 336, 358, 333 S.W.2d 799, 809 (1960).

[13]Jordan v. State, 156 Tenn. 509, 514, 3 S.W.2d 159, 160 (1928)(citations omitted).

[14]State v. Overton, 193 Tenn. 171, 174, 245 S.W.2d 188, 189 (1951); Stanfield v. State, 181 Tenn. 428, 432, 181 S.W.2d 617, 618 (1944); Jordan, 156 Tenn. at 514, 3 S.W.2d at 160; State v. Tate, 912 S.W.2d 785, 789 (Tenn. Crim. App. 1995).

[15]Coke v. State, 208 Tenn. 248, 250-51, 345 S.W.2d 673, 674 (1961); Starks v. State, 66 Tenn. 64, 66 (1872); see Tate, 912 S.W.2d at 789.

by reading the indictment or presentment the offense it must apply the judgment to if the defendant is convicted. Fourth, the defendant must be able to determine with accuracy from reading the indictment or presentment to what extent he or she may plead former acquittal or conviction in a subsequent prosecution for the same offense.

## B.

As a general rule, the failure to raise an issue pertaining to an indictment pre-trial constitutes a waiver of the issue.[16] There are two exceptions to this rule. First, jurisdictional issues raised by the indictment or presentment are not waived.[17] Also, issues concerning whether the indictment or presentment alleges a criminal offense are not waived.[18] In this case, the defendant contends the two counts do not allege a criminal offense because an element of the offense has not been alleged.

When a defendant voluntarily, knowingly, and intelligently enters a plea of guilty, the defendant waives all prior non-jurisdictional, procedural, and constitutional defects which occurred prior to the time the plea of guilty was entered.[19] This Court has reasoned that a defendant who has entered a plea of guilty has no standing in an appellate court to complain of any error committed in the fact-finding process leading to his conviction.[20] This rule is applicable to defects in an indictment.[21]

While this Court is of the opinion the defendant has waived this issue, the issue will

---

[16]Tenn. R. Crim. P. 12(f). See State v. Davis, 613 S.W.2d 218, 221 (Tenn. 1981); State v. Joyner, 759 S.W.2d 422, 425 (Tenn. Crim. App. 1987); per. app. denied (Tenn. 1988); State v. Rhoden, 739 S.W.2d 6, 10 (Tenn. Crim. App.), per. app. denied (Tenn. 1987); State v. Farmer, 675 S.W.2d 212, 214 (Tenn. Crim. App. 1984); State v. Bowers, 673 S.W.2d 887, 888 (Tenn. Crim. App.), per. app. denied (Tenn. 1984).

[17]Tenn. R. Crim. P. 12(b)(2).

[18]Tenn. R. Crim. P. 12(b)(2).

[19]See Capri Adult Cinema v. State, 537 S.W.2d 896, 899 (Tenn. 1976); Ray v. State, 224 Tenn. 164, 451 S.W.2d 854 (1970); State v. McKissack, 917 S.W.2d 714 (Tenn. Crim. App. 1995); Roe v. State, 584 S.W.2d 257, 259 (Tenn. Crim. App.), cert. denied (Tenn. 1979); Ingram v. Henderson, 2 Tenn. Crim. App. 372, 379, 454 S.W.2d 167, 170, cert. denied (1970); McFerren v. State, 1 Tenn. Crim. App. 688, 449 S.W.2d 724 (1969), cert. denied (Tenn. 1970).

[20]Porter, 495 S.W.2d 570 (Tenn. Crim. App.), cert. denied (Tenn. 1973).

[21]Porter, supra.

9

be considered on the merits.

## C.

The two counts of the indictment attacked by the appellant contain sufficient allegations to comply with the Tennessee Constitution, the applicable statute, and the common law rules created by the supreme court. The counts allege the defendant killed the victims, he killed the victims during the perpetration of one of the enumerated felonies, and the killings were unlawful. Thus, it is clear the defendant was apprised of the specific crimes he was required to defend; the trial court could read these counts and know the offense to apply the judgment to when the defendant was convicted; and the specific nature of the allegations will permit the defendant to interpose a plea of former conviction in a subsequent prosecution.

It is obvious from the record the defendant was not surprised or hampered in defending these counts of the indictments. To the contrary, he specifically and strategically insisted on pleading guilty to these two specific offenses. As previously stated, the assistant district attorney general wanted him to plead to premeditated murder as alleged in Count I of each indictment. Defense counsel rejected this. The discussion regarding the choice of offenses -- the defendant's desire to plead guilty to felony murder versus the state's desire for the defendant to plead guilty to premeditated murder -- consumes several pages of the record. Finally, the two assistant district attorney generals conferred, and, thereafter, agreed the defendant could plead guilty to Count II of each indictment. The submission hearing illustrates the defendant knew the nature of the charges to which he was pleading guilty. Moreover, he confessed to the commission of these very offenses, namely, kicking the door open to gain entry into the apartment, arming himself and Anderson with a shotgun when they entered the apartment, and killing both victims.

It is apparent the defendant chose not to raise this issue before, during or after the trial for strategic purposes. He simply placed this issue in his hip pocket, waited to see if the jury would return death sentences, and, when the jury returned such sentences, he asserted this issue for the first time in this Court. This tactical decision may have been the

precise reason, or one of the reasons, why defense counsel continually insisted the defendant be permitted to plead guilty to felony murder. The counts alleging premeditated murder were facially regular. The defendant's argument as to the sufficiency of these counts of the indictment would not apply to the premeditated murder counts.

This issue is without merit.

## II.

## SUFFICIENCY OF THE AGGRAVATING CIRCUMSTANCE[22]

The defendant contends the evidence contained in the record is insufficient, as a matter of law, to support a finding by a rational trier of fact that the two felony murders in this case were especially heinous, atrocious, or cruel in that they involved torture or serious physical abuse beyond that necessary to produce death[23] beyond a reasonable doubt. He argues a single gunshot wound to the head which results in the instantaneous death of the victim does not constitute "torture" within the meaning of this aggravating circumstance (i)(5).[24]

The State of Tennessee contends this aggravating circumstance was established beyond a reasonable doubt. The state concedes that killing both victims with a single gunshot wound to the head did not result in the "infliction of severe physical pain" or "serious physical abuse beyond that necessary to produce death." The state argues however the evidence establishes this aggravating circumstance beyond a reasonable doubt because the appellant inflicted severe mental pain to Mr. and Mrs. Jackson while they were alive and conscious.

The verdict form returned by the jury supports the state's argument. The jury wrote

---

[22]In the heading to this issue in his brief, the defendant claims that the especially heinous, atrocious, or cruel aggravating circumstance is unconstitutionally vague. The defendant fails, however, to address this claim in the body of his brief and cites to no authority in support of his argument. Nonetheless, the supreme court has recently addressed a similar claim and upheld the validity of this aggravator under constitutional attacks. See State v. Odom, 928 S.W.2d 18 (Tenn. 1996). Accordingly, this feeble claim must fail.

[23]Tenn. Code Ann. § 39-13-204(i)(5)(1991).

[24]Tenn. Code Ann. § 39-13-204(i)(5)(1991).

11

on the form: "heinous, atrocious, cruel torture."

## A.

The first step in resolving this issue is the determination of the standard of appellate review to be applied in this case. In State v. Williams,[25] the supreme court stated the standard of review set forth in Jackson v. Virginia[26] governs the determination of whether an aggravating circumstance has been established beyond a reasonable doubt.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt."[27] This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.[28]

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence.[29] Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence.[30] To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.[31]

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the

---

[25]690 S.W.2d 517 (Tenn. 1985).

[26]443 U..S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

[27]Tenn. R. App. P. 13(e).

[28]State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

[29]State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

[30]Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).

[31]State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

trier of fact, not this Court.[32] In State v. Grace,[33] our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.[34] This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.[35]

## B.

Prior to 1989, aggravating circumstance (i)(5) provided: "The murder was especially heinous, atrocious or cruel in that it involved torture or depravity of mind."[36] The Tennessee General Assembly amended this aggravating circumstance in 1989.[37] The 1989 revision, which is applicable to this case, states: "The murder was especially heinous, atrocious, or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death."[38] As can be seen, the General Assembly deleted the phrase "depravity of mind" and inserted "serious physical abuse beyond that necessary to produce death."

In 1985, the supreme court defined the term "torture" in the context it is used in this aggravating circumstance in State v. Williams.[39] In Williams, the supreme court said:

---

[32]Cabbage, 571 S.W.2d at 835.

[33]493 S.W.2d 474, 476 (Tenn. 1973).

[34]State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

[35]Tuggle, 639 S.W.2d at 914.

[36]Tenn. Code Ann. § 39-2-203(i)(5)(repealed)(emphasis added).

[37]1989 Tenn. Pub. Acts, ch. 591, § 1.

[38]Tenn. Code Ann. § 39-13-204(i)(5)(1991)(emphasis added).

[39]690 S.W.2d 517 (Tenn. 1985).

"'Torture' means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious."[40]

The question this Court must next consider is whether there is proof beyond a reasonable doubt the defendant inflicted severe mental pain while the victims were alive and conscious, and will these facts support the imposition of this aggravating circumstance to support a death sentence.

## C.

A search for a prior supreme court decision applying the "infliction of severe . . . mental pain while the [victim] remains alive and consciousness" has been fruitless. Most of the cases decided by the supreme court interpret the pre-1989 version of aggravating circumstance (i)(5). As previously noted, the prior version stated there could be either torture or depravity of mind. These decisions say either both prongs of the pre-1989 version have been established, or the actions of the defendant constituted torture or depravity of mind. Thus, it is impossible for this Court to determine whether the supreme court has concluded in these cases whether there was (a) the infliction of severe physical pain, (b) the infliction of severe mental pain, or (c) the accused possessed a depraved mind. It is apparent from reading the State of Tennessee's brief the assistant attorney general encountered this same dilemma.

The state cites the case of State v. King[41] as supporting its theory regarding the infliction of severe mental pain. The state's reliance on this case is misplaced. In King, the defendant was convicted of felony murder. The felonies were simple kidnapping and robbery. The defendant made the victim get into the trunk of her car, took her to a remote location, and made her get out of the trunk and lay on the ground. The victim faced the defendant, begged him not to kill her, and told him she would give him money if he spared her life. The defendant told the victim to turn her head away from him. He then shot the victim in the back of the head one or more times. The supreme court was not called upon

---

[40]690 S.W.2d at 529.

[41]718 S.W.2d 241 (Tenn. 1986).

14

to decide the issue now before this Court. The defendant admitted the evidence contained in the record was sufficient to support the aggravating circumstances found by the jury beyond a reasonable doubt. The only question before the supreme court was the sufficiency of the jury instruction given by the trial court regarding this aggravating circumstance. The court found the instruction was sufficient, and the evidence supported this circumstance.

In the recent case of State v. Odom,[42] the supreme court in a three-to-two decision held the evidence did not establish this aggravating circumstance. There, the defendant attacked a lady who was 78 years of age. As he attempted to steal her purse, they fell into the front seat of the victim's automobile. The defendant subsequently forced the victim into the back seat of the automobile and cut the victim with his knife. While the victim pleaded with the defendant to stop, she referred to him as "son". The defendant became angry due to the use of the word "son" and told the victim "I'll give you a son." He then raped the victim, who was still a virgin. He apparently stabbed the victim several times. According to the defendant's statement to the police, he felt the victim was alive during the entire ordeal because she spoke to him before he left her. The victim literally bled to death internally from the serious knife wounds inflicted by the defendant. The majority opinion concluded these facts did not constitute torture or serious physical abuse beyond that necessary to produce death. In ruling, the supreme court said:

> The issue remains whether the evidence in this case was sufficient to uphold a finding of the (i)(5) aggravating circumstance. We well understand that almost all murders are "heinous, atrocious, and cruel" to some degree, and we have no purpose to demean or minimize the ordeal this murder victim experienced. In our view, however, rape (penile penetration) does not ordinarily constitute "torture" or "serious physical abuse" within the meaning of the statute. Were we to hold otherwise, every murder committed in the perpetration of rape could be classified as a death-eligible offense. Such a result, obviously, would not sufficiently narrow the class of perpetrators, nor would it distinguish the "worst of the worse" for whom the ultimate penalty must be reserved. See State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992). In a similar vein, and with the same disclaimer above-appearing, we must reject the conclusion that the three stab wounds evidenced in this case constituted "torture" or serious physical abuse beyond that necessary to produce death.

---

[42] 928 S.W.2d 18 (Tenn. 1996).

As we consider the circumstances here, we do not intend to diminish what surely must have been a terrifying and horror-filled experience for the victim. Most assuredly, the murder was reprehensible in the purest sense of the word -- nearly all murders are. However, the aggravating circumstance under review must be reserved for application only to those cases which, by comparison or contrast, can be articulately determined to be the very "worst of the worse."

As previously stated, the defendant contends that the evidence does not support the jury's finding that the murder was "especially heinous, atrocious, or cruel." We have thoroughly considered this contention and conclude that under the criteria we have discussed the evidence in the record does not support the jury's finding of the "heinous, atrocious, or cruel" circumstance.[43]

While the majority opinion adopted the Williams definition of torture, it is apparent the majority opinion did not consider whether Odom inflicted severe mental pain to the victim since she was still alive and conscious when Odom fled from the scene of the crime. If mental pain remains part of the definition of "torture," this was a classic case where severe mental pain was inflicted. The majority opinion describes the ordeal the victim endured as "terrifying" and "horror-filled."

---

[43]928 S.W.2d at 26-27. The author of this opinion does not agree with the holding of the supreme court in Odom. However, this Court must religiously follow Odom as this Court is required to follow each decision decided by the supreme court. Barger v. Brock, 535 S.W.2d 337, 340-41 (Tenn. 1976); State v. Davis, 654 S.W.2d 688, 690 (Tenn. Crim. App. 1983). In Barger, the supreme court said:

[T]he Supreme Court is a direct creature of the Constitution and constitutes the supreme judicial tribunal of the state and is a court of last resort. All other courts are constitutionally inferior tribunals subject to the actions of the Supreme Court. Its adjudications are final and conclusive upon all questions determined by it, subject only to review, in appropriate cases by the Supreme Court of the United States. Railroad v. Byrne, 119 Tenn. 278, 104 S.W. 460 (1907).

* * * *

It is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process. There would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decisions. Personal and property rights would be insecure and litigation would know no end.

535 S.W.2d at 340-41. In other words, neither a trial court nor this Court has the authority to modify, revise, modernize or overrule a rule created by the Supreme Court. Barger, supra; Bloodworth v. Stuart, 221 Tenn. 567, 572, 428 S.W.2d 786, 789 (1968); see Richardson v. Johnson, 60 Tenn. App. 129, 136, 444 S.W.2d 708, 711, cert. denied (Tenn. 1969).

The dissenting opinion in Odom espouses the view that this aggravating circumstance was established beyond a reasonable doubt because the victim was tortured by the defendant. Justice Anderson, the author of the dissenting opinion, stated: "In this case, the defendant inflicted severe physical and mental pain upon the victim while she remained alive and conscious."[44]

This Court is of the opinion aggravating circumstance (i)(5) can be established by proving the defendant inflicted severe mental pain while the victim was alive and conscious. This Court has held such proof is sufficient.[45] The next question this Court must address is whether the evidence establishes this factor beyond a reasonable doubt.

## D.

When Mr. Jackson told the defendant and Anderson he did not understand what Anderson meant by "wanting to get something," the defendant thought they were at the wrong apartment. Nevertheless, the defendant and Anderson kicked the door open and entered the apartment wielding a sawed-off shotgun. The defendant questioned Mr. Jackson concerning the location of the money and drugs. Mr. Jackson told the defendant he did not understand the nature of his inquiry. Jackson was placed in a closet located in his daughter's bedroom.

Anderson went to the back of the apartment. He encountered Mrs. Jackson. He made her submit while he raped her. She subsequently went into the bathroom off the master bedroom. She was screaming and pleading for her life.

The record reflects the Jacksons were hard-working, God-fearing people. They both worked regularly, and they were raising their small child. The child was three years old when both of her parents were murdered. One can imagine the terror which filled Mr. and Mrs. Jackson when two strangers wielding a shotgun entered their apartment at 12:30 a.m. The strangers were asking questions which did not make sense to Mr. Jackson. Thus, the

[44]928 S.W.2d at 35.

[45]State v. Henry Eugene Hodges, Davidson County No. 01-C-01-9212-CR-00382 (Tenn. Crim. App., Nashville, May 18, 1995), mandatory appeal pending in Tennessee Supreme Court; see State v. Ronnie Michael Cauthern, Gibson County No. 02-C-01-9506-CC-00164 (Tenn. Crim. App., Jackson, December 2, 1996).

defendant and Anderson should have left when it became apparent Mr. and Mrs. Jackson were not involved in drug trafficking. Instead, the defendant and Anderson scared and horrified the Jacksons, and did what the Jacksons most assuredly feared -- they killed the couple. The murders in this case were senseless and mean-spirited.

When the defendant and Anderson kicked the door open and were wielding a shotgun, Mr. Jackson knew the defendant and Anderson were extremely mean and dangerous. Certainly, fear and horrible thoughts must have run through his mind. Was he going to be injured or killed? Was his wife going to be injured or killed? And what about his daughter? Would they harm her as well? He surely must have known his wife was being raped since Anderson apparently began this act before Mr. Jackson was confined to the closet. He must have heard his wife scream and plead for her life.

There is evidence in the record from which a jury could find that the Jacksons' daughter was laying on a pillow in the closet when her father was killed. Her nightgown was splattered with blood. The pathologist said Mr. Jackson died instantly when he was shot, and his heart would have stopped pumping blood. A rational trier of fact could conclude the child was inside the closet when her father was murdered, and her nightgown was splattered with blood from the gunshot wound inflicted by the defendant. It was a horrible wound which opened the right side of Mr. Jackson's head. The walls inside the closet were sprayed with blood.

The pain Mr. Jackson endured when he realized he was going to be killed and his daughter possibly murdered had to be severe. He was helpless to protect his daughter from the defendant and the shotgun he had in his possession.

Mrs. Jackson did not know if she was going to be killed. She did not know where her husband and daughter were. She had to wonder whether her husband and daughter were going to be harmed. She was no doubt concerned about the remainder of her family. Would she have a husband? Would she have a child? Would she live? What other thoughts could she embrace while she was raped, threatened, and literally terrorized by these two total strangers shortly before being killed.

In State v. Hodges, the appellant handcuffed the victim, wrapped tape around his legs, and placed a pillow over his head while he and his girlfriend ransacked the victim's

18

residence. They sat in the living room drinking soft drinks while they discussed whether they were going to kill the victim. The victim could hear this conversation. This Court held the conduct of Hodges constituted "torture" as defined in Williams -- the infliction of severe mental pain while the victim was alive and conscious.

What the Jacksons were caused to endure at the hands of the defendant and Anderson before they were murdered was especially heinous, atrocious and cruel. The defendant's conduct was senseless, vile, repulsive, odious, mean, and evil. In summary, the defendant inflicted severe mental pain to Mr. and Mrs. Jackson while they were alive and conscious; and the evidence contained in the record is sufficient beyond a reasonable doubt to support a finding by a rational trier of fact that the murders were heinous, atrocious, and cruel because of the mental torture endured by the victims.

## III.
## EVIDENTIARY ISSUES

The defendant contends the trial court committed error of prejudicial dimensions by permitting the State of Tennessee to introduce "inflammatory and irrelevant evidence in violation of [his] constitutional rights under the 8th and 14th amendments." He argues the trial court should have excluded (a) certain photographs because they were not relevant to any aggravating circumstance, (b) the fact Anderson raped Tensia Jackson, and (c) the state's suggestion the defendant placed the Jacksons' three-year-old child in the closet with Thomas Jackson. The State of Tennessee contends the evidence challenged by the defendant was properly admitted.

## A.

When the defendant in a capital case pleads guilty, the sentencing hearing is analogous to a new sentencing hearing ordered by an appellate court. In State v.

19

Nichols,[46] where the defendant entered a plea of guilty to a capital offense, the supreme court applied the case law governing "resentencing" hearings. Consequently, this body of law is to be applied in resolving the issues raised by the defendant in this case.

As a general rule, any evidence that relates to the circumstances of the murders, the aggravating circumstances of the murders, or the mitigating circumstances, is admissible if it has probative value in determining the appropriate punishment.[47] The statute which governs the introduction of evidence in a capital sentencing hearing provides:

> In the sentencing proceeding, evidence may be presented as to any matter that the court deems relevant to the punishment and may include, but not be limited to, the nature and circumstances of the crime; the defendant's character, background history, and physical condition; any evidence tending to establish or rebut the aggravating circumstances enumerated in subsection (i); and any evidence tending to establish or rebut any mitigating factors. Any such evidence which the court deems to have probative value on the issue of punishment may be received regardless of its admissibility under the rules of evidence; provided, that the defendant is accorded a fair opportunity to rebut any hearsay statements so admitted. However, this subsection shall not be construed to authorize the introduction of any evidence secured in violation of the constitution of the United States or of the state of Tennessee.[48]

Since there is no guilt phase when the accused pleads guilty to the capital offense or in resentencing after an initial finding of guilt by a jury, the parties are entitled to introduce evidence that relates to the circumstances of the offense so the trier of fact "will have [the] essential background information 'to ensure that the jury acts from a base of knowledge in sentencing the defendant.'"[49] The phrase "background information"[50] includes evidence as to (a) how the crime was committed, (b) the injuries, (c) the aggravating

---

[46]877 S.W.2d 722, 731 (Tenn. 1994), cert. denied, ___ U.S.___, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995).

[47]Tenn. Code Ann. § 39-13-204(c); State v. Teague, 897 S.W.2d 248 (Tenn. 1995).

[48]Tenn. Code Ann. § 39-13-204(c).

[49]State v. Adkins, 725 S.W.2d 660, 663 (Tenn.), cert. denied, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987)(quoting State v. Teague, 680 S.W.2d 785, 788 (Tenn. 1984), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 622 (1985)); see also Nichols, 877 S.W.2d at 731; State v. Miller, 771 S.W.2d 401, 403 (Tenn. 1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3292, 111 L.Ed.2d 801 (1990).

[50]This phrase should not be confused with the phrase "background history" as used in Tenn. Code Ann. § 39-13-204(c).

circumstances, (d) the mitigating circumstances, and (e) any other evidence which is relevant to punishment.[51]

In State v. Teague,[52] commonly referred to as Teague II, a new sentencing hearing was conducted by the trial court after the case was remanded by the supreme court. The trial court permitted the state to establish (a) the victim's apartment had been forcibly entered, (b) the victim had been drowned in the bathtub, (c) the accused's arrest and the fact he was armed with a pistol when arrested, and (d) the accused told two companions he killed the victim. The supreme court rejected Teague's assertion the evidence at the sentencing hearing should be limited to evidence which is relevant to aggravating and mitigating circumstances. In ruling, the court said:

> The defendant questions the introduction of background evidence concerning the murder, insisting that in the sentencing proceeding only evidence relevant to aggravating and mitigating circumstances should have been allowed at the hearing. Guidelines for re-sentencing hearings in general have been set out in Farris v. State, 535 S.W.2d 608, 621 (Tenn. 1976); Hunter v. State, 496 S.W.2d 900, 903 (Tenn. 1972); and in Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738, 743 (1956). Under these guidelines, evidence of how the crime was committed, the injuries, and aggravating and mitigating factors are admissible. There appears to be no reason why such guidelines, carefully limiting evidence to the essential background, should not apply in capital cases in order to ensure that the jury acts from a base of knowledge in sentencing the defendant. See e.g., Blankenship v. State, 251 Ga. 621, 308 S.E.2d 369, 371 (1983)(parties at capital re-sentencing are entitled to offer evidence relating to circumstances of crime).[53]

In State v. Nichols,[54] the defendant, as in this case, entered a plea of guilty to the capital offense of first degree murder in the perpetration of a felony. A jury was empaneled to determine the appropriate punishment. The state was permitted to introduce evidence regarding (a) the nature and circumstances of the crime, (b) the accused's videotaped confession, (c) the "testimony from the medical examiner about the nature and extent of the victim's injuries and the cause of her death," (d) the testimony of the detectives who

---

[51]Teague, 680 S.W.2d at 787-88.

[52]680 S.W.2d 785.

[53]680 S.W.2d at 787-88.

[54]877 S.W.2d 722.

21

questioned the accused, and (e) the evidence of the accused's prior crimes of violence.[55]

Nichols contended on appeal the trial court committed error of prejudicial dimensions by permitting "extensive evidence of the nature and circumstances of the crime." He argued the "only evidence relevant to aggravating and mitigating circumstances should have been allowed."[56] In rejecting Nichols' argument, the supreme court referred to the applicable statute and the court's opinion in Teague II, and said:

> Because the defendant pled guilty, the sentencing jury here, as in Teague, had no information about the offense, absent the complained of evidence. A description of the crime and its circumstances was thus clearly admissible. Moreover, an "individualized [sentencing] determination" based on the defendant's character and the circumstances of the crime is constitutionally required. See Zant v. Stephens, 462 U.S. 862, 879, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983). In this case, the trial court permitted the introduction of evidence tending to "individualize" the case for the jury, while carefully limiting the evidence to testimony relevant to the crime. We find no error in this regard.[57]

In State v. Bigbee,[58] the supreme court affirmed Bigbee's conviction, but remanded the case to the trial court for a new sentencing hearing. In doing so, the Court noted:

> We should point out, however, that "[a]t a resentencing hearing, both the State and defendant are entitled to offer evidence relating to the circumstances of the crime so that the sentencing jury will have essential background information 'to ensure that the jury acts from a base of knowledge in sentencing the defendant.'" . . . On remand, that right should be afforded this defendant.[59]

In State v. Teague,[60] commonly referred to as Teague IV, the trial court granted Teague's motion that the prosecution disclose all exculpatory Brady material for use in the defendant's third sentencing hearing. The court denied the state's motion in limine to prevent the disclosure of evidence which challenged the defendant's guilt. The state

---

[55]877 S.W.2d at 726.

[56]877 S.W.2d at 731.

[57]877 S.W.2d at 731.

[58]885 S.W.2d at 797.

[59]885 S.W.2d at 813 (citations omitted).

[60]897 S.W.2d 248 (Tenn. 1995).

sought and was granted an interlocutory appeal pursuant to Rule 9, Tennessee Rules of Appellate Procedure. This Court reversed the trial court's finding that evidence of the defendant's innocence was admissible; the opinion was predicated upon prior supreme court opinions. The supreme court reversed this Court. In doing so, the court said:

> Both the statute and prior case law dictate that the defendant has the right to present at the sentencing hearing, whether by the jury which heard the guilt phase or by a jury on resentencing, evidence relating to the circumstances of the crime or the aggravating or mitigating circumstances, including evidence which may mitigate his culpability. Evidence otherwise admissible under the pleadings and applicable rules of evidence, is not rendered inadmissible because it may show that the defendant did not kill the victim so long as it is probative on the issue of the defendant's punishment.[61]

Neither the supreme court nor this Court can delineate a bright-line rule for determining the exact evidence that can be admitted at a sentencing hearing following a defendant's plea of guilty to a capital offense or the granting of a new sentencing hearing from a trial or appellate court. The facts and evidence introduced at such hearings will vary from case to case. The defendant in each case is different from the defendants in all other capital cases.

The applicable statute, Tenn. Code Ann. § 39-13-204(c), provides the determination of what evidence may be admitted in a capital sentencing hearing rests within the sound discretion of the trial court. Moreover, an appellate court will not interfere with the exercise of this discretion unless clear abuse appears on the face of the record.

## B.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[62] Although relevant evidence is generally admissible,[63] it "may be excluded if its probative value is substantially outweighed by the danger of unfair

---

[61]897 S.W.2d at 256.

[62]Tenn. R. Evid. 401.

[63]Tenn. R. Evid. 402.

23

prejudice . . . or by considerations of undue delay, waste of time, or needless presentation or cumulative evidence."[64]

The fact relevant evidence is prejudicial does not mean the evidence must be excluded as a matter of law. As this Court said in State v. Dulsworth:[65] "Any evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law."[66] As Rule 403, Tennessee Rules of Evidence, states: "the danger of unfair prejudice" must "substantially outweigh" the probative value of the evidence before the accused is entitled to have the evidence excluded.[67]

The determination of whether evidence is relevant, or, if relevant, should be excluded for one of the reasons set forth in Rule 403, addresses itself to the sound discretion of the trial court.[68] In deciding these issues, the trial court must consider, among other things, the questions of fact the jury will have to consider in determining the accused's guilt as well as other evidence which has been introduced during the course of the trial.[69] If the trial court in the exercise of its discretion finds the evidence is relevant within the meaning of Rule 401, and the defendant is not entitled to have the evidence excluded for one of the grounds set forth in Rule 403, this Court will not interfere with the exercise of this discretion unless it appears on the face of the record the trial court clearly abused its discretion.[70]

---

[64]Tenn. R. Evid. 403.

[65]781 S.W.2d 277, 287 (Tenn. Crim. App.), per. app. denied (Tenn. 1989).

[66]781 S.W.2d at 287; see State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App.1993), per. app. denied (Tenn.1994).

[67]State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995).

[68]Williamson, 919 S.W.2d at 78; State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App.), per. app. denied (Tenn. 1994).

[69]Williamson, 919 S.W.2d at 78; Dulsworth, 781 S.W.2d at 287.

[70]Williamson, 919 S.W.2d at 79; State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App.), per. app. denied (Tenn. 1995).

## C.

The purpose for introducing photographs into evidence is to assist the trier of fact. As a general rule, the introduction of photographs helps the trier of fact to see for itself what is depicted in a photograph rather than relying upon a witness to describe what is depicted.

Before a photograph may be introduced into evidence, there must be a determination by the trial court (a) the matter depicted in the photograph is relevant to an issue which the jury must decide in determining the guilt or appropriate sentence for the crime committed by the defendant, and (b) the probative value of the matter depicted in the photograph outweighs any prejudicial effect it may have upon the trier of fact.[71]

In this case, the trial court spent an extended period of time listening to the arguments of counsel regarding the admissibility of the photographs the State of Tennessee wanted to introduce. The court spent additional time carefully viewing these photographs. The court excluded some of the photographs. The balance of the photographs was introduced as evidence during the sentencing hearing.

This Court has viewed the photographs which are attacked in this issue. They depict the victims as they were found by the police officers who were called to the scene. The trial court did not abuse its discretion in admitting these photographs because the photographs were admissible as background information regarding the commission of the crimes in question. In addition, the photographs establish where the victims were shot.

This subissue is without merit.

## D.

The defendant contends the fact Anderson raped Tensia Jackson before she was killed should not have been admitted into evidence "since there was absolutely no evidence that he participated in, or even knew of his co-defendant's intentions to commit

---

[71]Tenn. R. Evid. 403; State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978); see also, State v. Bigbee, 885 S.W.2d 797, 807 (Tenn. 1994); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993), cert. denied 511 U.S. 1040, 114 S.Ct. 1577, 128 L.Ed.2d 220 (1994).

rape." The State of Tennessee contends this evidence was clearly admissible.

The rape of Mrs. Jackson was a relevant circumstance which, along with other relevant circumstances, established the severe mental pain inflicted by the defendant and Anderson while Mrs. Jackson was alive and conscious. The defendant knew Anderson was raping Mrs. Jackson because he went into the room and retrieved the shotgun while Anderson was in the act. The defendant did not urge or encourage Anderson to cease and desist. Moreover, they shared the same culpable mental state. The defendant cannot now divorce himself from the acts committed by Anderson. They were co-conspirators. They committed the acts in question together.

In summary, the actions of Anderson could be considered by the jury when determining the existence of aggravating circumstance (i)(5) relative to the infliction of severe mental pain while Mr. and Mrs. Jackson were alive and conscious.

This subissue is without merit.

## E.

The defendant contends "the suggestion that this defendant placed the child. . .in the closet with her dead father was not relevant to any aggravating circumstance." The State of Tennessee takes the view the suggestion was in fact relevant.

The suggestion the defendant or Anderson placed the child inside the closet with her father is not far-fetched. The pictures of the child's bed indicate the child was not in her bed. There is a butcher knife lying on the child's bed. Although the defendant stated the small child was in her bed when he left the apartment, there is evidence to support the theory that the child was inside the closet when the defendant killed Thomas Jackson.

As previously stated, the pathologist testified the multiple pellets from the shotgun blast literally exploded Mr. Jackson's brain. According to the pathologist, Mr. Jackson's heart would have stopped pumping blood through his body immediately. Yet the nightgown of the small child was splattered with blood. Given the state of the record and the nature of Mr. Jackson's wound, the jury could have reasonably concluded the child was in the closet when the defendant killed her father. The nature of the wound would have

26

resulted in blood splattering inside the closet.

In summary, the fact the child was not in her bed as the defendant stated lends credence to the theory the child was required to get into the closet, and the child was inside the closet when her father was shot. This was relevant to establish the infliction of severe mental pain while Mr. Jackson was alive and conscious. His concern for his daughter and the fact she might also be killed no doubt caused Mr. Jackson severe mental pain while he was alive and conscious.

This subissue is without.

## IV.

## DEFENDANT'S STATEMENT

The defendant contends the trial court committed error of prejudicial dimensions by denying his motion to suppress the incriminating statements he gave to police officers. Since the defendant entered pleas of guilty to the offenses of felony murder, this issue was waived.

As previously stated, when a defendant voluntarily, knowingly, and intelligently enters a plea of guilty, the defendant waives all prior non-jurisdictional, procedural, and constitutional defects which occurred prior to the time the plea of guilty was entered.[72] This Court has said that a defendant who enters a plea of guilty has no standing in an appellate court to complain of any error committed in the fact-finding process leading to his conviction.[73]

No effort was made to preserve this issue for appellate review pursuant to Tenn. R. App. P. 3(b) or Tenn. R. Crim. P. 37(b)(2)(iv). If the defendant has preserved this issue in conformity with these rules, it is doubtful whether this issue would be dispositive of the prosecution against the defendant.

___

[72]See Capri Adult Cinema v. State, 537 S.W.2d 896, 899 (Tenn. 1976); Ray v. State, 224 Tenn. 164, 451 S.W.2d 854 (1970); State v. McKissack, 917 S.W.2d 714 (Tenn. Crim. App. 1995); Roe v. State, 584 S.W.2d 257, 259 (Tenn. Crim. App.), cert. denied (Tenn. 1979); Ingram v. Henderson, 2 Tenn. Crim. App. 372, 379, 454 S.W.2d 167, 170, cert. denied (Tenn. 1970); McFerren v. State, 1 Tenn. Crim. App. 688, 449 S.W.2d 724 (1969), cert. denied (Tenn. 1970).

[73]Porter v. State, 495 S.W.2d 570 (Tenn. Crim. App.), cert. denied (Tenn. 1973).

This Court has reviewed the evidence admitted at the suppression hearing. It is parenthetically noted the defendant is not entitled to relief on this ground.

## V.

## SENTENCE OF LIFE WITHOUT POSSIBILITY OF PAROLE

The defendant contends the trial court committed error of prejudicial dimension by failing to answer a juror's question concerning the defendant's parole eligibility if a life sentence was imposed by the jury. The defendant further contends the court should have included an instruction on the sentencing option of life without the possibility of parole in the charge given to the jury. The state asserts the trial judge acted according to the mandates of the law.

Just as soon as the trial court completed giving the charge to the jury, one of the jurors asked the judge, "On life imprisonment, are they eligible for parole in the State of Tennessee, or is that life?" After discussing the question with counsel, the judge informed the juror that he could not answer it.

The trial court was correct in refusing to answer the question propounded by the juror. In State v. Smith,[74] the supreme court specifically ruled a trial court should not answer a jury's question concerning the meaning of a life sentence and the defendant's eligibility of parole. This Court has also answered this question adversely to the defendant.[75]

The defendant's claim that the trial court should have instructed the jury on life without the possibility of parole as a sentencing option is equally without merit. The Tennessee General Assembly specifically provided the sentencing option of life without the possibility of parole was to apply in first degree murder cases on and after July 1, 1993.[76] The appellant killed the Jacksons prior to the effective date of this sentencing option.

---

[74]857 S.W.2d 1, 10-11 (Tenn. 1993), cert. denied, 510 U.S. 996, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993), and cert. denied, 510 U.S. 1040, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994).

[75]State v. Michael Dean Bush, Cumberland County No. 03-C-01-9403-CR-00094, slip op. at 30, (Tenn. Crim. App., Knoxville, February 12, 1996).

[76]1993 Tenn. Pub. Acts, ch. 473, § 16.

Therefore, the trial court properly refused to instruct the jury on this sentencing option.[77]

This issue is without merit.

# VI.

# CALDWELL VIOLATIONS

The defendant contends the assistant district attorney general violated the rule enunciated by the United States Supreme Court in Caldwell v. Mississippi[78] during rebuttal argument. The state contends the defendant has waived this issue by failing to interpose a contemporaneous objection when the statements were made. In the alternative, the state argues the assistant district attorney general's statements were appropriate.

During rebuttal argument, the assistant district attorney, responding to statements made by defense counsel, stated:

> The last thing that he said and was talking about mitigation, about you taking a life. And I . . . respectfully have to take exception to what you say. You [the jury] can't take a life. You can't walk out of that jury box and touch that man.
>
> * * * *
>
> Be like you'd like that surgeon to be, dispassionate, professional. Don't let somebody put a guilt trip on you. You're not taking anybody's life. You can't do that. You don't have that power. Neither do I.

As previously stated, the failure to interpose a contemporaneous objection when adversary counsel engages in allegedly erroneous argument constitutes a waiver of the issue.[79] However, due to the qualitative differences between death and other sentences, the appellate courts of this state consider issues occurring during the sentencing hearing

---

[77]State v. Christopher S. Beckham, Shelby County No. 02-C-01-9406-CR-00107 (Tenn. Crim. App., Jackson, Sept. 27, 1995), per. app. granted (Tenn. July 8, 1996)(supreme court remanded the case to the trial court for a new sentencing hearing pursuant to State v. Harris, 919 S.W.2d 323 (Tenn. 1996)).

[78]472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

[79]State v. Renner, 912 S.W.2d 701, 705 (Tenn. 1995); Hunter v. State, 222 Tenn. 672, 702, 440 S.W.2d 1, 15 (1969), judgment vacated on other grounds, 403 U.S. 711, 91 S.Ct. 2285, 29 L.Ed.2d 820 (1971), cert. denied, 403 U.S. 955, 91 S.Ct. 2286, 29 L.Ed.2d 865 (1971); State v. Gregory, 862 S.W.2d 574, 578 (Tenn. Crim. App. 1992).

in a capital case notwithstanding waiver of the issue.[80]    Therefore, this Court opts to consider this issue on the merits.

In Caldwell, the prosecuting attorney stated to the jury during summation "your decision is not the final decision," "your job is reviewable," and "the decision you render is automatically reviewable by the Supreme Court."[81]    The trial court overruled the defendant's objection to these statements.    However, the trial court instructed the prosecuting attorney to inform the jury its decision was automatically reviewable.  The United States Supreme Court held "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere."[82]    The Court found the argument was improper and violative of the Constitution.

In Romano v. Oklahoma,[83] a case decided subsequent to Caldwell, the Court noted it has

> since read Caldwell as "relevant only to certain types of comment - those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." Darden v. Wainwright, 477 U.S. 168, 184, n.15, 106 S.Ct. 2464, 2473, n.15 (1986), 91 L.Ed.2d 144 (1986).  Thus, "[t]o establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." Dugger v. Adams, 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989).[84]

This Court has reviewed the statement made by the assistant district attorney general in the context it was made.  The statement clearly does not violate Caldwell.

---

[80]See State v. Bigbee, 885 S.W.2d 797, 805 (Tenn. 1994); State v. Duncan, 698 S.W.2d 63, 67-68 (Tenn. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986); State v. Strouth, 620 S.W.2d 467, 471 (Tenn. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1491, 71 L.Ed.2d 692 (1982); see also State v. Nichols, 877 S.W.2d 722 (Tenn. 1994), cert. denied ___ U.S. ___, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995)(supreme court addressed merits of this very issue even though appellant failed to contemporaneously object to the statements).

[81]Caldwell, 472 U.S. at 325-26, 105 S.Ct. at 2637-38, 86 L.Ed.2d at 237.

[82]Caldwell, 472 U.S. at 328-29, 105 S.Ct. at 2639, 86 L.Ed.2d at 239.

[83]___ U.S. ___, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994).

[84]___ U.S. at ___, 114 S.Ct. at 2010, 129 L.Ed.2d at 11.

This issue is without merit.

## VII.

## VALIDITY OF VERDICT FORM

The defendant contends the jury's verdict was not authorized by law, and, therefore, the jury's verdict was facially void. He argues the verdict form given to the jury for the return of its verdict was designed for verdicts returned before the 1989 amendment to Tenn. Code Ann. § 39-13-204(g)(1). The State of Tennessee contends this issue was waived because the defendant failed to (a) make a contemporaneous objection when the verdicts of the jury were read in open court and (b) include the issue in his motion for a new trial. In the alternative, the state argues the use of the verdict form constituted harmless error.

The trial court instructed the jury on the state's burden of proof as to each aggravating circumstance asserted by the state. The court also instructed the jury on the mitigating circumstances raised by the defendant. The trial court then told the jury:

> If you unanimously determine that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proven by the State, beyond a reasonable doubt, and said circumstance or circumstances have been proven by the State to outweigh any mitigating circumstance or circumstances beyond a reasonable doubt, the sentence shall be death. The Jury shall reduce to writing the statutory aggravating circumstance or statutory aggravating circumstances so found and signify that the State has proven beyond a reasonable doubt that the statutory aggravating circumstance or circumstances outweigh any mitigating circumstances.

The defendant concedes the jury was properly instructed by the trial court.

The form given to the jury for the recordation of its verdict stated:

## PUNISHMENT OF DEATH

> (1) We, the Jury, unanimously find the following listed statutory aggravating circumstance or circumstances:
>
> (Here list the statutory aggravating circumstance or circumstances so found, which shall be limited

31

to those enumerated by the Court for your consideration)

(Written by Jury) Heinous, Atrocious, Cruel, Torture

(2) We the jury, unanimously find that there are no mitigating circumstances sufficiently substantial to outweigh the statutory aggravating circumstance or circumstances so listed above.

(3) Therefore, we, the Jury, unanimously find that the punishment for the defendant, Preston Carter, shall be death.

(All of the jurors signed here)

The two verdict forms and verdicts were the same in both cases.

When the jury returned its verdicts, they were examined by the trial court. The two verdicts were then read in their entirety. In other words, the above verdict form was read in open court.

## A.

In this jurisdiction, the failure to make a contemporaneous objection when the defendant is aware there has been an error in the proceedings constitutes a waiver of the issue. Rule 36(a), Tennessee Rules of Appellate Procedure, provides that nothing contained in the rule "shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." The Supreme Court has applied this rule in capital cases.[85] However, most of the cases have applied the rule to issues raised during the determination of guilt as opposed to the sentencing phase of the trial.

In State v. Brimmer,[86] a case factually similar to this case, the defendant complained the trial court did not give an instruction that aggravating circumstances must outweigh mitigating circumstances beyond a reasonable doubt. The supreme court found this issue was without merit because the killing occurred prior to the amendment to the statute. In addressing the issue on the merits, the supreme court said:

---

[85]See State v. West, 844 S.W.2d 144, 151 (Tenn. 1992); State v. Hines, 758 S.W.2d 515, 519 (Tenn. 1988); State v. Coker, 746 S.W.2d 167, 173 (Tenn. 1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).

[86]876 S.W.2d 75 (Tenn. 1994).

32

Normally, defendant's failure to take any action to call this issue to the trial court's attention and his active procurement of an instruction he now claims is erroneous would preclude review on appeal. See T.R.A.P. 3(e) and 36(a). In the present case, however, if defendant was tried under the law inapplicable to his case, his substantial rights may have been affected. Under these circumstances we exercise our discretion to review this issue in order to insure substantial justice is done. See T. R. Cr. P. 52(b).[87]

The failure to raise this issue in the motion for a new trial also results in waiver of the issue. Rule 3(e), Tennessee Rules of Appellate Procedure, states in part:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated at waived.

The supreme court has applied this rule in death penalty cases.[88] Again, the use of this rule has been limited to issues occurring during the guilt phase of the proceedings.

While this issue has been waived, this Court will nevertheless address this issue on its merits.[89]

---

[87]876 S.W.2d at 82.

[88]See Walker, 910 S.W.2d 381, 386 (Tenn. 1995), cert. denied, ___ U.S. ___, 117 S.Ct. 88, 136 L.Ed.2d 45 (1996); State v. Bigbee, 885 S.W.2d 797, 804 (Tenn. 1993); State v. Bane, 853 S.W.2d 483, 488 (Tenn. 1993), cert. denied, 510 U.S. 1040, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994); State v. Caldwell, 671 S.W.2d 459, 465 (Tenn. 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984).

[89]Tenn. R. App. P. 13(b); Tenn. R. Crim. P. 52(b).

**B.**

As previously noted, the trial court correctly instructed the jury on the law it was to apply in determining whether the State of Tennessee had met its burden of proof on the aggravating circumstances raised by the evidence, how the jurors were to consider mitigating circumstances submitted by the defendant, and how the jury was to determine whether the aggravating circumstances outweighed the mitigating circumstances. The jury is presumed to follow the instructions given by the trial court absent proof to the contrary.[90]

Any error in using the aforementioned jury verdict form was harmless beyond a reasonable doubt. Considering the entire record, this error did not affect the jury verdict, and it did not result in prejudice to the judicial process or the defendant.[91]

This issue is without merit.

**VIII.**

**CONSTITUTIONALITY OF THE DEATH PENALTY**

In his last issue, the appellant makes standard attacks against the constitutionality of the death penalty in Tennessee. The appellant acknowledges that these claims have repeatedly been rejected, but raises them in order to preserve them for later review. The supreme court has repeatedly upheld the constitutionality of the death penalty in the face of similar challenges.[92]

This issue is without merit.

---

[90]See State v. Laney, 654 S.W.2d 383, 389 (Tenn. 1983), cert. denied, 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983).

[91]Tenn. R. App. P. 36(b).

[92]See State v. Smith, 893 S.W.2d 908, 924 (Tenn. 1994), cert. denied, ___ U.S. ___, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995); State v. Brimmer, 876 S.W.2d 75, 86 (Tenn. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 585, 130 L.Ed.2d 499 (1994); State v. Cazes, 875 S.W.2d 253, 268-70 (Tenn. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995); State v. Smith, 857 S.W.2d 1, 23 (Tenn. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 561, 126 L.Ed.2d 461 (1993); State v. Black, 815 S.W.2d 166, 185 (Tenn. 1991); State v. Boyd, 797 S.W.2d 589, 599 (Tenn. 1990), cert. denied, 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1991); State v. Teel, 793 S.W.2d 236, 251 (Tenn. 1990), cert. denied 498 U.S. 1007, 111 S.Ct. 571, 112 L.Ed.2d 577 (1990); State v. Thompson, 768 S.W.2d 239, 252 (Tenn. 1989), cert. denied, 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1990).

**CONCLUSION**

This Court has considered the issues raised by the defendant in considerable detail. Based upon the analysis of the issues hereinabove set forth, it is the opinion of this Court the death sentences should be affirmed.

The death sentences have been reviewed by this Court in the manner mandated by Tenn. Code Ann. § 39-13-206(c)(1). The report of the trial court has been reviewed. This Court is of the opinion the sentences were not imposed in an arbitrary manner. In addition, a comparative proportionality review, which considers both the nature of the crime and the defendant, reveals the death sentences, in the context of this case, are neither excessive nor disproportionate to death sentences imposed in similar cases.

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
DAVID H. WELLES, JUDGE

_____
JERRY L. SMITH, JUDGE