# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs November 1, 2012

## STATE OF TENNESSEE v. ROBERT EARL BORNER

**Direct Appeal from the Circuit Court for McNairy County**
**No. 2673      J. Weber McCraw, Judge**

---

**No. W2012-00473-CCA-R3-CD  - Filed April 16, 2013**

---

A McNairy County Circuit Court Jury convicted the appellant, Robert Earl Borner, of the delivery of less than .5 grams of cocaine.  The trial court sentenced the appellant to eight years in the Tennessee Department of Correction.  On appeal, the appellant argues that the trial court erred in admitting the recording of the transaction; that the trial court erred by failing to enter a judgment of acquittal because the evidence was insufficient to sustain his conviction; that the indictment against him was defective; and that he was denied a jury of his peers.  Upon review, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

Ross Mitchell (at trial and on appeal) and Paul Simpson (at trial), Selmer, Tennessee, for the appellant, Robert Earl Borner.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Bob Gray, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

    At trial, Kimball Holley, Selmer Assistant Chief of Police and narcotics investigator, testified that at approximately 4:10 or 4:15 p.m. on June 3, 2010, he and Investigator Ted Roberts met confidential informants Ray Lamar and Vernita Armstrong at the Presbyterian church on East Poplar Avenue to plan the day's drug purchases.  The investigators told the

informants to purchase crack cocaine from Roy Jamison on Pine Street. Investigator Holley searched the informants; however, he acknowledged that his search of Armstrong was limited to turning out her pockets because "[t]hat's about the only way I could search a woman." Investigator Roberts searched the informants' vehicle. No contraband was found on the informants or in their vehicle.

The investigators equipped the informants with an audiovisual recording device that was disguised as an ink pen. The camera was on the clip of the pen. The investigators advised the informants to keep the clip directed forward because the device recorded only what was directly in front of it. The informants were also equipped with a device that transmitted a wireless, audio signal to police, but the signal was "choppy." Investigator Holley gave the informants $100 cash to purchase approximately half a gram of crack cocaine.

At 4:29 p.m., the informants drove their car to Pine Street, and the investigators followed at a distance. The informants were unable to make a purchase because Jamison was not at home. At 4:38 p.m., Investigator Holley instructed the informants to try to purchase drugs on Oak Street. At that point, the investigators lost visual contact with the informants but maintained partial audio surveillance. Investigator Holley heard the informants leave Oak Street at 4:55 p.m. The investigators next saw the informants at 5:10 p.m. at the church and retrieved from Lamar a white, rock-like substance he purchased from the appellant. The informants were able to purchase only $60 worth of crack cocaine. Investigator Holley said he paid the informants a total of $100 for their assistance. Investigator Holley put the suspected drugs into the evidence locker at the police station and later sent it to the Tennessee Bureau of Investigation (TBI) crime laboratory for testing.

Investigator Holley said that he reviewed the audiovisual recording of the transaction. He explained that the image shook because the recording device was not held in a stable position. Investigator Holley, who had known the appellant for several years, did not recognize the appellant's voice on the recording. He noted that Lamar and Armstrong were used in five other drug buys that resulted in successful prosecutions.

On cross-examination, Investigator Holley acknowledged that the appellant was not the primary target of the informants' drug purchase. He explained that after the primary target, Jamison, was unavailable, he suggested Oak Street as a secondary location for the informants to attempt a drug buy. Once at Oak Street, the informants found the appellant and purchased drugs from him. Investigator Holley never saw the appellant that day. He said that from 4:55 to 5:10 p.m., he and Investigator Roberts lost contact with the informants. The informants told Investigator Holley that they had gone to a duplex on Purdy Road. Investigator Holley said the recording reflected that the informants met someone and had a

brief conversation but that there was no evidence of a drug transaction at that location.

On redirect examination, Investigator Holley stated that the appellant could be seen on the recording of the drug transaction.

Selmer Police Investigator Ted Roberts testified that on June 3, 2010, he and Investigator Holley met confidential informants Lamar and Armstrong at a location on the east side of Selmer. Investigator Roberts searched the informants' car for contraband and found none. He equipped Lamar with a camera pen to record the drug buy. Lamar was also equipped with a separate device that transmitted audio; however, the reception of the signal was inconsistent, and there were periods of time when no audio was transmitted. The investigators met the informants again after the buy was completed. Investigator Roberts retrieved the electronic equipment and searched the vehicle, again finding no contraband. Investigator Holley searched the informants and retrieved from Lamar a bag containing a white, rock-like substance.

On cross-examination, Investigator Roberts said that the informants went to Pine Street first then went to Oak Street where they encountered the appellant. The appellant got into the informants' vehicle; they drove to a location on Purdy Road, and they returned to Oak Street where the appellant got out of the car. Investigator Roberts acknowledged that the informants spoke with other people but maintained that the appellant was the only person who got in their car. Investigator Roberts denied that there was ever a time when he was unsure of the informants' location. He asserted, "We maintained phone contact as well as the wireless audio so we knew where they were at, at all times." Investigator Roberts conceded that he never saw the appellant that day. He stated that he had worked with the informants on three or four occasions and that the informants were paid $100 for their assistance.

Shalandus Harris, a special agent forensic scientist with the TBI crime laboratory, testified that she tested the substance obtained in the instant case and determined it was .3 grams of cocaine, a Schedule II controlled substance.

Vernita Armstrong, who was serving a sentence for aggravated burglary, testified that she and Lamar formerly lived together as boyfriend and girlfriend. She said that in June 2010, she and Lamar occasionally used crack cocaine. She acknowledged that she knew the appellant through her family.

Armstrong said that on June 3, 2010, she and Lamar met with the investigators behind a church. Armstrong said that she did not have any illegal substances in her possession. The investigators equipped Lamar with a pen camera. Afterward, she and Lamar got into

Lamar's vehicle and left the church to make a drug purchase. She could not remember what happened after leaving the church. She initially stated that she did not recall whether she saw the appellant that day; however, she eventually stated that she saw the appellant, but she did not remember him getting into Lamar's car. She recalled that Lamar was paid $100 for helping the police. Armstrong said that she was uncomfortable testifying against the appellant because he was a family friend.

Ray Lamar testified that he and Armstrong had previously been engaged. He said that he and Armstrong were convicted of aggravated burglary, for which he was serving a probationary sentence. Lamar said that as a result of his substance abuse problems, he became familiar with people in McNairy County who sold drugs and made several purchases of crack cocaine for law enforcement agencies. Typically, he purchased $100 worth of crack cocaine at a time. For $100, he would get "[a]bout five twenties," which was generally a "[l]ittle bit more than half a gram" of crack cocaine. He worked for law enforcement in McNairy County approximately three times and was paid $100 for each transaction.

Lamar said that on June 3, 2010, he met Investigators Holley and Roberts behind a church in Selmer. The investigators searched Lamar, Armstrong, and Lamar's vehicle. They equipped Lamar with a pen camera, which he hung from a lanyard around his neck, and gave him five $20 bills with which to purchase drugs. Thereafter, Lamar and Armstrong left to buy drugs from someone on Pine Street. However, the person from whom they were supposed to buy drugs was not home. Lamar contacted the investigators by telephone, and they decided that Lamar and Armstrong should go to Oak Street to make a buy. When they arrived at Oak Street, they saw the appellant and five or six other people in the yard of a residence, "drinking[ and] carrying on." Lamar said that he knew the appellant and the appellant's family. Lamar told the appellant and another man, "I need to score a hundred dollars," which was slang for $100 worth of crack cocaine. The appellant said that he did not have the drugs but that he knew where Lamar could get them.

The appellant got into Lamar's vehicle, and they drove to a duplex on Purdy Road. The appellant got out of the car with the $100 Lamar had given him and spoke with someone. The appellant returned to the car and told Lamar that the people at the duplex had only $60 worth of crack cocaine. Lamar agreed to take the lesser amount, and the appellant went to speak with someone on the carport of the duplex. Lamar saw money changing hands between the appellant and the person on the carport. When the appellant returned to the car, he gave Lamar $40 change and "[t]hree, twenty dollar pieces of crack cocaine" that were inside a piece of a plastic shopping bag. Lamar drove the appellant back to Oak Street, and Lamar and Armstrong returned to rendezvous with the investigators. Lamar gave the investigators the $40 and the crack cocaine. The investigators paid Lamar $100. Lamar maintained that he and Armstrong did not go anywhere else before meeting the investigators

-4-

and that they did not pick up anyone else. Lamar said that the appellant was in the car with him for approximately thirty or forty-five minutes.

On cross-examination, Lamar stated that he had not used cocaine for approximately one year. At the time of the drug buy, he used cocaine occasionally. He stated that he had a good memory of the transaction and that he did not use cocaine that day. Lamar said that when he arrived at Pine Street, the appellant was outside a residence with other people, drinking and listening to music.

The State played the recording of the transaction for the jury then rested its case-in-chief. The appellant chose not to testify or put on proof. The jury convicted the appellant of the delivery of less than .5 grams of cocaine, a Class C felony, and the trial court imposed an eight-year sentence.

On appeal, the appellant argues that the trial court erred in admitting the recording of the transaction; that trial court erred by failing to enter a judgment of acquittal because the evidence was insufficient to sustain his conviction; that the indictment charging him was defective; and that he was denied a jury of his peers.

## II. Analysis

### A. Admission of Evidence

First, the appellant maintains that the trial court erred by allowing the State to admit the recording of the drug transaction. He maintains that the probative value of the recording was outweighed by the prejudice to the appellant. The State argues that the appellant was not unfairly prejudiced by the evidence.

The record reflects that on redirect examination, Investigator Holley explained that the ink pen camera was plugged into a computer's USB port in order to download footage. He said that the footage "depicts the camera being on, the two confidential sources were talking about it, depicts us going to different locations." Investigator Holley said that the appellant can be seen on the recording.

After Lamar testified, the State asked the court for permission to play the recording of the drug transaction. Defense counsel said, "I just want to put an objection on the record to showing the video. I think it's – I think the probative value is outweighed by the prejudice showing the [appellant] on the video." The State responded, "It's a very generic video showing the [appellant] present at the transaction that Mr. Lamar described. I don't think it's at all particularly prejudicial." The trial court overruled defense counsel's objection and

allowed the recording to be played for the jury.

The appellant contends that because of the poor placement of the camera, the video showed only the inside of the informants' vehicle and that the actual delivery of the crack cocaine was not captured on video. As a result, the probative value of the recording was diminished. He acknowledges, however, that after the informants arrived at Oak Street, the appellant appeared on the video. He contends "that the primary objective of the State in displaying the video evidence to the jury was to provide a definitive identification of the [appellant], and to place the [appellant] in the same location that the informants were during the investigation." He asserts that without the video, the State would be forced to rely on the testimony of the informants to identify the appellant. The appellant contends that any probative value was outweighed by the prejudicial effect of the evidence.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401; see also State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999). Tennessee Rule of Evidence 402 provides that "[a]ll relevant evidence is admissible except as [otherwise] provided. . . . Evidence which is not relevant is not admissible." However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

Because the video contained the audio and video evidence of the transaction, it clearly had probative value. Although the appellant maintains that the evidence was prejudicial, relevant evidence is excluded only if "*substantially outweighed* by the danger of *unfair prejudice*." Tenn. R. Evid. 403 (emphasis added). This court has cautioned that "'unfair prejudice' should be carefully distinguished from the prejudice 'naturally flow[ing] from all admissible evidence [that] is intended to persuade the trier of fact.'" State v. Coulter, 67 S.W.3d 3, 48 (Tenn. Crim. App. 2001) (quoting State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App. 1995)). "Any evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law." State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1998). In other words, "the mere fact that evidence is particularly damaging does not make it unfairly prejudicial." State v. Gentry, 881 S.W.2d 1, 7 (Tenn. Crim. App. 1993). We conclude that the recording is not unfairly prejudicial to the appellant and that the trial court did not err by admitting the recording.

B. Sufficiency of the Evidence

The appellant contends that the trial court should have granted a judgment of acquittal because the evidence was insufficient to sustain his conviction. The State disagrees. "The standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction." State v. Thompson, 88 S.W.3d 611, 614-15 (Tenn. Crim. App. 2000). Therefore, we will address the appellant's complaint as a challenge to the sufficiency of the evidence.

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Regarding the appellant's conviction, our criminal code provides that it is a Class C felony "for a defendant to knowingly . . . [d]eliver a controlled substance," such as cocaine. Tenn. Code Ann. § 39-17-417(a)(2), (c)(2)(A). In the instant case, Investigators Holley and Roberts searched the informants and their car prior to the transaction but found no contraband. They equipped Lamar with a pen camera. Lamar and Armstrong went to Oak Street, where they saw the appellant outside a residence. Lamar told the appellant that he needed $100 worth of crack cocaine. The appellant said he did not have the drugs but knew where Lamar could get them. The appellant got into Lamar's car, and they drove to a duplex on Purdy Street. The appellant got out of the vehicle with the $100 Lamar gave him and arranged to buy $60 worth of crack cocaine. Upon returning to the car, the appellant gave Lamar $40 change and three, $20 rocks of crack cocaine. Lamar gave the substance to Investigator Holley, who in turn submitted it to the TBI for testing, which revealed the substance was .3 grams of crack cocaine.

The appellant argues that the informants were not credible and that the video did not depict the actual transaction. However, determining the credibility of witnesses is within the

purview of the jury.  See State v. Millsaps, 30 S.W.3d 364, 368 (Tenn. Crim. App. 2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[ ] of fact").  In the instant case, the jury clearly resolved the issue of credibility in the State's favor.  We may not now reconsider the jury's credibility assessment.  See State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000).  We conclude the evidence was sufficient to sustain the appellant's conviction.

### C.  Sufficiency of Indictment

Next, the appellant contends that the indictment charged him with delivering ".5 grams or less" of cocaine, did not follow the statutory language, and did not provide adequate notice of the offense charged.  He maintains that the indictment should have charged him with delivering "less than .5 grams" of cocaine.  He notes that Tennessee Code Annotated section 39-17-417(a)(2), (c)(1) and (2) prohibits the delivery of cocaine in the amount of less than .5 grams, which is a Class C felony, and in the amount of .5 grams or more, a Class B felony; he contends that the indictment was confusing because it "suggest[ed] culpability for both classes of sale/delivery crimes."  The State maintains that the appellant waived the issue by failing to raise it prior to trial and that, regardless, the indictment was sufficient.

Initially, we note that the appellant did not raise the issue of the sufficiency of the indictment prior to trial.  Aside from objections challenging the trial court's jurisdiction and objections contending that the indictment failed to charge an offense, all objections to an indictment must be raised prior to trial.  See State v. Nixon, 977 S.W.2d 119, 120-121 (Tenn. Crim. App. 1997).  Therefore, we conclude that the appellant waived his right to complain about the alleged defect.  See Tenn. R. Crim. P. 12(b)(1) and (f) (stating that defenses and objections based on defects in the indictment must be raised prior to trial or they are considered waived); Jackson v. State, 475 S.W.2d 563, 565 (Tenn. Crim. App. 1971).

### D.  Jury of Peers

Finally, the appellant maintains that he was denied a jury of his peers because he was African-American and the jury was comprised of eleven Caucasians and one African-American.  The State contends that the appellant waived the issue by raising it for the first time at the motion for new trial.  We agree with the State that the appellant's failure to raise his complaints during jury selection resulted in waiver of the issue.  See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"); see also State v. Johnson, 980 S.W.2d 414, 419 (Tenn. Crim. App. 1998); State v. Dobbins, 754 S.W.2d 637, 640 (Tenn. Crim. App. 1988).

### III. Conclusion

In sum, we conclude that the trial court did not err by admitting the recording of the drug transaction, that the evidence was sufficient to sustain the appellant's conviction, that the appellant waived his challenge to the sufficiency of the indictment, and that the appellant waived his challenge to the racial composition of the jury. Accordingly, the judgment of the trial court is affirmed.

_____
NORMA McGEE OGLE, JUDGE